[No. 15643-1-II.   Division Two.   June 27, 1994.]

SANDRA L. WATTERS, *Appellant,* v. ABERDEEN RECREATION, INC., *Respondent.*

---

*David L. Edwards* and *Parker, Johnson, Edwards & Parker,* for appellant.

*Steven R. Meeks* and *Meeks, Morgan & Kirkpatrick,* for respondent.

MORGAN, C.J. — Sandra Watters appeals a summary judgment in favor of Aberdeen Recreation, Inc. We affirm.

On the evening of October 10, 1988,[1] two leagues were scheduled to bowl at a bowling alley operated by Aberdeen Recreation. One started at 6:30 p.m., while the other started at 9 p.m. Watters was on a team in the later league.

Watters was the first bowler for her team. Wearing rented bowling shoes, she stepped onto the approach with her bowling ball, took two steps, lost her footing, and fell. She landed in the lane, beyond the foul line. She suffered a fractured hip as a result of the fall.

---

[1]Watters's complaint alleges that the pertinent evening is October 11. Various witnesses recall October 11, also. However, Watters asserted October 10 in her affidavit submitted in opposition to summary judgment, Clerk's Papers, at 42, so we use that date.

On September 6, 1990, Watters filed suit. She alleged that Aberdeen Recreation was negligent in failing to properly inspect the premises and the rental shoes; in failing to maintain the premises in a safe condition; and in failing to discover and remove a dangerous condition.[2]

Aberdeen Recreation moved for summary judgment. It contended that Watters had no evidence of any unsafe condition involving the floor or her shoes.

In connection with the motion, the parties submitted a variety of materials. Watters stated in a deposition taken September 10, 1991:

Q: Okay. Now, I think you said that you felt there was something on the floor or something?

A: [Watters] Yes.

Q: Okay. What do you think it was?

A: I have no idea. When Sid came over and asked me what happened, I said there was something on the floor, I couldn't stop.

Q: Okay. Do you have any information to lead you to think there was something on the floor other than you falling?

A: That's the first thing that c[a]me out of my mouth, there had to have been something on the floor, because I couldn't stop.

Q: You obviously were never able to inspect it because of your injury and the fact you were lying there. Is that right?

A: Right.

. . . .

Q: You're not aware of anybody finding any substance on the floor then, is that correct?

A: Not after everybody had already stepped there.

Q: Are you aware of anybody finding anything on the floor at any time?

A: No.

. . . .

Q: As far as you know, was there anything wrong with your shoes, the bowling shoes that you were wearing?

A: I have no idea. . . .

. . . .

Q: Do you have any information that the bowling shoes were slippery?

A: No.

---

[2]Watters also alleged that Aberdeen Recreation had negligently failed to warn customers of the risks of bowling. That argument is meritless and will not be further discussed.

> Q: . . . Is there anything in particular that you know about the shoes that made them unsafe?
>
> A: No.

Clerk's Papers, at 29-31.

Watters also stated in a declaration:

> [F]rom the feeling that I experienced when I lost control, I believe that my foot contacted a foreign substance on the lane approach or, perhaps, on the bottom of my rented bowling shoes.

Clerk's Papers, at 48.

Three witnesses stated in affidavits that immediately after Watters fell, they checked the floor for slippery substances and found nothing. Two also stated that they checked Watters's shoes and found nothing.

Dr. Peter Fisher, a physician specializing "in biokinetics and the investigation of injuries for forensic evaluation",[3] submitted a declaration stating in part:

> 4. In this case, I met with Sandra Watters at the Defendant's premises on October 17, 19 91, at which time the Plaintiff showed me where and how her accident occurred. I have also made a thorough review of Plaintiff's medical records.
>
> 5. Given the nature, extent and location of Plaintiff's hip fracture, I have determined the probable angle and direction of impact of the Plaintiff's hip upon the surface of the bowling lane.
>
> 6. Given the angle of such impact, it is my opinion, based upon reasonable medical certainty, that the Plaintiff did not fall as a result of tripping or stumbling; rather, it is my opinion that Mrs. Watters fell as a result of a sudden loss of traction under one, or both, of her feet.
>
> 7. Based upon my inspection of the bowling lanes and approaches, it is my opinion that some foreign substance was on the approach used by Mrs. Watters, which foreign substance would have caused sudden loss of traction experienced by Mrs. Watters. This opinion is based upon my observation of the approach when it was cleaned and free of dust, oil and other foreign substance. The surface of the approach in a clean condition would not have resulted in a sudden loss of traction such as Mrs. Watters obviously encountered when she fell and sustained the injuries described in her medical records.

Clerk's Papers, at 54-55.

---

[3]Clerk's Papers, at 53.

Based on these materials, the trial court granted summary judgment and dismissed the suit. Watters then filed this appeal.

■ We engage in the same analysis as the trial court. We consider the evidence in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *Yakima Cy. Fire Protec. Dist. 12 v. Yakima*, 122 Wn.2d 371, 381, 858 P.2d 245 (1993); *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 61, 847 P.2d 440 (1993); CR 56(c).

■ A party alleging negligence must establish duty, breach, causation and damage. *Hansen v. Friend,* 118 Wn.2d 476, 479, 824 P.2d 483 (1992). Here, it is undisputed that Watters was an invitee to whom Aberdeen Recreation owed a duty of ordinary care. However, Aberdeen Recreation claims that Watters has insufficient evidence to prove a breach of that duty.

■ The first step toward proving breach is to produce evidence from which it can be inferred that an unsafe condition existed. Then, it is necessary to show either that the condition was caused by the defendant or its employees, or that the condition was within the actual or constructive knowledge of the defendant. *Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 458, 805 P.2d 793 (1991); *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49, 666 P.2d 888 (1983); *Coleman v. Ernst Home Ctr., Inc.*, 70 Wn. App. 213, 217, 853 P.2d 473 (1993).

Here, Watters has no personal knowledge that an unsafe condition existed at the time of her fall, either with respect to the floor or with respect to the bowling shoes she had rented. Three other witnesses are prepared to testify, based on personal knowledge, that no such condition existed. Dr. Fisher's opinion is not supported by personal knowledge; by any methodology generally accepted in the scientific community, *see State v. Riker*, 123 Wn.2d 351, 869 P.2d 43 (1994); by scientific validity of the kind described in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469,

113 S. Ct. 2786 (1993), *but see Riker*, 123 Wn.2d at 360 n.1; or by any facts or methodology that would satisfy ER 702. In sum, Watters lacks evidence from which a jury could reasonably infer that an unsafe condition existed, and the trial court did not err by granting summary judgment.

Affirmed.

SEINFELD and HOUGHTON, JJ., concur.