[No. 22068-7-II.   Division Two.   September 4, 1998.]
DOROTHY ATTWOOD, *Individually and as Personal Representative*, ET AL., *Appellants*, v. ALBERTSON'S FOOD CENTERS, INC., ET AL., *Respondents*.

---

*Dan'l W. Bridges* of *Sloan, Bobrick & Oldfield, Inc., P.S.*, for appellants.

*Mark E. Cavanagh* and *Timothy J. Parker* of *Carney, Badley, Smith & Spellman*, for respondents.

HOUGHTON, C.J. — Dorothy Attwood, individually and as representative of the estate of Irwin Dwaine Attwood (Dwaine Attwood), Diane France, and Thressa Ross

(Attwood) filed a lawsuit against Albertson's Food Centers, Inc., et al (Albertson) for damages resulting from Dwaine Attwood's death. Attwood alleged that an Albertson's pharmacist negligently provided an inadequate dose and mislabeled prescription to Dwaine Attwood. Albertson admitted that an incorrect dosage was supplied, but moved for summary judgment on causation and supported its motion with expert testimony. Attwood countered with expert testimony. The trial court granted summary judgment of dismissal on grounds that Attwood failed to provide sufficient evidence of causation. We hold that there is a question of fact as to causation and, therefore, we reverse and remand.

## FACTS

Dwaine Attwood was prescribed an 80-milligram daily dose of furosemide to eliminate excess body fluid. In February 1992, Dwaine Attwood filled a prescription for 100 80-milligram tablets of furosemide at an Albertson's pharmacy. The pharmacist mistakenly gave him 100 40-milligram tablets in a bottle labeled "80 milligrams."

Dwaine Attwood began taking the incorrect 40-milligram tablets approximately two weeks after the prescription was filled and after his previous 80-milligram supply was depleted. Thereafter, he complained to his doctors about shortness of breath and fatigue. These signs and symptoms were unusual for him, because he had been physically active despite heart problems.[1] His shortness of breath worsened to the point where he was unable to tie his shoes without assistance.

On May 4, 1992, Dwaine Attwood suffered a near fatal episode of ventricular fibrillation[2] that led to a cardiac ar-

---

[1] For instance, Dwaine regularly worked in the yard, gardened, and played with his grandson, all without shortness of breath or fatigue.

[2] Ventricular fibrillation is an electrical impulse dysfunction in the heart muscle that prevents the heart from contracting in a coordinated, effective manner; essentially, the heart stops pumping.

rest. He was admitted to St. Joseph's Hospital, but later suffered a second episode of ventricular fibrillation and died in June 1992.

In June 1995, Attwood filed a lawsuit against Albertson seeking general and special damages associated with Dwaine Attwood's death. Attwood alleged that Albertson's negligence in providing the incorrect dosage of furosemide was a proximate cause of Dwaine Attwood's death. More specifically, Attwood alleged that the inadequate dosage caused Dwaine Attwood to suffer pulmonary edema leading to cardiac stress, which in turn lead to ventricular fibrillation and eventual death.

Albertson moved for summary judgment, contending that the inadequate dosage did not proximately cause Dwaine Attwood's death. In support of its motion, Albertson submitted the declarations of Drs. Robert Thompson and Jeffrey Werner, who declared that there was no causal link between pulmonary edema and ventricular fibrillation.

Attwood responded with deposition testimony of Dr. Melvin Henry and a declaration by Dr. G. Gilbert Johnston, Dwaine Attwood's treating physicians. Dr. Henry testified that the decreased Lasix[3] dosage was or could lead to a cause of Dwaine Attwood's death. Dr. Johnston opined that the decreased Lasix was a cause of the series of events leading to Dwaine Attwood's death.

The trial court reviewed counsel's memoranda and supporting documents and granted Albertson's motion for summary judgment dismissing the lawsuit.[4] Attwood appeals.

## ANALYSIS

Attwood contends that the trial court erred by giving

[3]Lasix is the product name for furosemide.

[4]Dr. Johnston's deposition was taken the day before the summary judgment motion, but was neither transcribed nor brought to the trial court's attention. On appeal, Albertson moved to supplement the record with Dr. Johnston's deposition. At oral argument, Attwood's counsel had no objection to supplementing our record with that deposition. Thus, our analysis includes review of the deposition.

undue weight to Albertson's evidence, thereby failing to view the facts in Attwood's favor. Attwood asserts in the alternative, that the supporting testimony provided sufficient evidence of "a" proximate cause of Dwaine Attwood's death and, even if the declaration and deposition were lacking in foundation, Albertson's failure to move to strike waived any alleged defect.

On review of summary judgment, an appellate court engages in the same inquiry as the trial court. *Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, 238, 852 P.2d 1111, *review denied*, 122 Wn.2d 1023 (1993). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). The appellate court considers all facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Clements*, 121 Wn.2d at 249. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Clements*, 121 Wn.2d at 249.

Generally, the issue of proximate causation is a question for the jury. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 935, 653 P.2d 280 (1982). A proximate cause is one that in natural and continuous sequence, unbroken by an independent cause, produces the injury complained of and without which the ultimate injury would not have occurred. *Bernethy*, 97 Wn.2d at 935; *see also Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 951 P.2d 749 (1998). Because the question of proximate cause is for the jury, "it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court." *Bernethy*, 97 Wn.2d at 935 (citations omitted).

Specifically, in cases involving alleged medical negligence, if a reasonable person could infer, from the facts, circumstances, and medical testimony, that a causal connection exists, the evidence is sufficient to survive summary judgment. *Douglas v. Freeman*, 117 Wn.2d 242, 252,

814 P.2d 1160 (1991); *McLaughlin v. Cooke*, 112 Wn.2d 829, 837, 774 P.2d 1171 (1989). The plaintiff need not establish causation by direct and positive evidence, but only by a chain of circumstances from which the ultimate fact required is reasonably and naturally inferable. *Teig v. St. John's Hosp.*, 63 Wn.2d 369, 381, 387 P.2d 527 (1963). But evidence establishing proximate cause must rise above speculation, conjecture, or mere possibility. *Reese v. Stroh*, 128 Wn.2d 300, 309, 907 P.2d 282 (1995). Thus, medical testimony must demonstrate that the alleged negligence "more likely than not" caused the later harmful condition leading to injury; that the defendant's actions "might have," "could have," or "possibly did" cause the subsequent condition is insufficient. *Merriman v. Toothaker*, 9 Wn. App. 810, 814, 515 P.2d 509 (1973).

Here, there is conflicting expert testimony. Albertson's expert, Dr. Thompson, opined that:

> Inadequate diuretic therapy has never been linked to ventricular fibrillation, Mr. Attwood's cause of death. There is no medical evidence that it either causes ventricular fibrillation or that it would decrease the chance of survival from ventricular fibrillation after hospitalization . . . . Dose alterations of Furosemide pose little threat to a patient's safety, and physicians frequently experiment with the level of dosage. At most, the substitution of 40 mg tablets for the 80 mg tablets would cause a reduction in exercise tolerance—assuming 40 mg was an inadequate dose, which is not established. There is no physiologic connection between the reduced dosage of Furosemide and Mr. Attwood's episode of ventricular fibrillation.

Albertson's other expert, Dr. Werner, agreed, but further elaborated on the cause of death to possibly include ventricular fibrillation as a result of pulmonary edema or congestion. But, Dr. Werner stated that this was not a supportable hypothesis since there was no evidence of congestion or pulmonary edema when Dwaine Attwood received a clinical exam and lung x-ray on April 27, 1992.

To the contrary, Attwood submitted the declaration of Dr. Johnston, who performed open heart surgery on Dwaine

Attwood after his cardiac arrest on May 4, 1992. Dr. Johnston concluded it was "medically more likely than not" true that: (1) 40 milligrams of furosemide was an inadequate dosage; (2) Dwaine Attwood suffered from pulmonary edema before his cardiac arrest in May 1992; and (3) Dwaine Attwood's death in June 1992 from another episode of ventricular fibrillation leading to cardiac arrest, was caused by the May cardiac arrest.

Albertson argues that the opinion Dr. Johnston expressed in his declaration lacks a proper scientific foundation because Dr. Johnston testified he was uncertain whether Dwaine Attwood suffered from congestive heart failure immediately before his episode of ventricular fibrillation on May 4, 1992. But Albertson misconstrues Dr. Johnston's declaration testimony. In his declaration, he does not express opinions based upon whether Dwaine Attwood was suffering from congestive heart failure but, rather, he sets forth an opinion based upon personal knowledge and a scientific understanding of anatomy and physiology. Dr. Johnston concluded that "the decrease in Mr. Attwood's intake of furosemide from 80 milligrams to 40 milligrams was one of the causes of his May 4, 1992 cardiac arrest. . . . [and] the most immediate cause in fact of his . . . heart failure was the damage . . . sustained during his May 4, 1992 cardiac arrest."[5]

Attwood also submitted deposition testimony of Dr. Henry, who had treated Dwaine Attwood a couple of months before his May 1992 ventricular fibrillation episode. According to Dr. Henry, a decreased dosage of furosemide could lead to congestive heart failure and increase the risk of heart rhythm problems.

---

[5]Albertson also cites *Watters v. Aberdeen Recreation, Inc.*, 75 Wn. App. 710, 879 P.2d 337 (1994), and asserts that Dr. Johnston fails to set forth a scientifically recognized basis for his opinions. *Id.* at 714. Albertson's reliance upon *Watters* is misplaced. In *Watters*, a physician specializing in "biokinetics" opined that the plaintiff fell after slipping on a foreign substance on the floor of a bowling alley. The physician stated that he could discern from hip x-rays that Watters slipped, rather than stumbled. *Id.* at 713. Reasonable minds could not differ that Dr. Fisher's opinion was not supported by personal knowledge, by methodology generally accepted in the scientific community, or by scientific validity. *Id.* at 714.

Dr. Henry's testimony, standing alone, is insufficient to establish an issue of material fact as to causation. But the testimony of Drs. Johnston and Henry, taken in the light most favorable to the nonmoving party, demonstrate that there is a disputed issue of material fact as to whether the decreased dosage of furosemide caused Dwaine Attwood's death.[6]

Reversed and remanded for further proceedings.

ARMSTRONG and HUNT, JJ., concur.

---

[6]Our resolution on the causation issue negates the need to analyze Attwood's argument regarding Albertson's failure to move to strike portions of the depositions.