3 P.3d 211 (2000)
101 Wash.App. 339
Gerald A. SHELLENBARGER and Carol J. Shellenbarger, husband and wife, Appellants,
v.
Lance BRIGMAN; Richard Kirkpatrick; and Internal Medicine Clinic of Longview, Respondents.
No. 23927-2-II.
Court of Appeals of Washington, Division 2.
June 30, 2000.
*212 Felix G. Luna, Robert D. Leinbach, Leonard J. Feldman, Peter Anthony Danelo, Heller, Ehrman, White & McAuliffe, Seattle, for Appellants.
Lory Ray Lybeck, Mercer Island, Lindsey Harris Hughes, Hallmark, Keating & Abbott, P.C., Portland, OR, for Respondents.
ARMSTRONG, C.J.
Gerald Shellenbarger, who was exposed to asbestos while working at Longview Fibre Company, sued two of his physicians for medical negligence and failure to secure his informed consent.[1] Shellenbarger alleged that the defendants failed to diagnose and treat his lung disease in its early stages. As a result, Shellenbarger claimed that he lost the opportunity to slow the progress of the disease. The two physicians moved for summary judgment and the trial court granted the motion, ruling that the defendants' negligence was not a proximate cause *213 of Shellenbarger's harm. Shellenbarger moved for reconsideration, submitting supplemental affidavits from his medical experts. The motion for reconsideration was denied. On appeal, Shellenbarger argues that he produced sufficient evidence to survive summary judgment. We agree and reverse and remand for trial.

FACTS
Gerald Shellenbarger was exposed to asbestos at Longview Fibre Company where he worked for over 25 years. Shellenbarger began seeing Dr. Lance Brigman in 1986, complaining of respiratory problems. In 1987, Dr. Brigman referred Shellenbarger to Dr. James Patterson, a pulmonary specialist. Following the consultation, Dr. Patterson informed Dr. Brigman that Shellenbarger did not have asbestosis yet, but that there:
[A]re some suggestive findings. He has a question of increased markings consistent with early interstitial fibrosis on chest x-ray, although he does not have any pleural changes of asbestos-related disease.
I agree with your diagnosis of mild reactive airways disease with recurrent bronchitis and asthmatic bronchitis, and confirmed this to him.
According to Shellenbarger, Dr. Brigman never told him of the diagnosis of mild reactive airways disease. Nor did he tell him that he had increased markings on his chest x-ray consistent with early interstitial fibrosis.
Until 1992, Shellenbarger sought treatment for a variety of respiratory symptoms from Dr. Brigman. He was treated consistently with antibiotics. Shellenbarger then transferred his primary care to Dr. Richard Kirkpatrick. For the two years Shellenbarger was his patient, Dr. Kirkpatrick also treated Shellenbarger with antibiotics. Neither physician referred Shellenbarger to a pulmonary specialist, even though Shellenbarger's condition did not improve.
In June 1996, Shellenbarger went to the University of Washington Medical Center Pulmonary Specialties Clinic, where he was seen by Dr. Ganesh Raghu. Dr. Raghu diagnosed pulmonary fibrosis, an incurable disease.
Shellenbarger filed a complaint in June 1997, alleging that Drs. Brigman and Kirkpatrick[2] failed to meet the applicable standards of care and failed to obtain informed consent. Shortly after filing the complaint, Shellenbarger's first attorney withdrew. Shellenbarger's second attorney had already given notice of her intent to withdraw when the defendants moved for summary judgment in March 1998. The trial court permitted the second attorney to withdraw ten days before Shellenbarger's opposing brief was due. Pro se, Shellenbarger filed documents in opposition to the summary judgment motions.[3] Three days before oral argument, Shellenbarger retained his current counsel, who was granted more time to prepare for the summary judgment. Shellenbarger then submitted two additional affidavits of Dr. Raghu, one dated May 14, 1998, and another dated June 8, 1998.
The trial court granted the motions for summary judgment as to all defendants. Shellenbarger moved for reconsideration, arguing in part, newly discovered evidence and that substantial justice had not been done. As newly discovered evidence, Shellenbarger offered the Affidavit of Dr. Robert Schoene and the Amended Supplemental Affidavit of Dr. Raghu. The trial court initially denied the motion for reconsideration but requested additional briefing and oral argument on the question of whether to consider the additional affidavits of Drs. Schoene and Raghu. The trial court then denied Shellenbarger's motion for reconsideration in its entirety and entered an order granting summary judgment.

ANALYSIS
Shellenbarger's negligence claims are based upon the doctors' alleged failure to *214 diagnose and treat his lung disease. His informed consent claim is based on the doctors' alleged failure to inform him of the disease. Shellenbarger contends that there was sufficient evidence to survive summary judgment and that the trial court abused its discretion by denying his motion for reconsideration.

I. Standard of Review
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). In doing so, we consider all evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party. Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 226, 770 P.2d 182 (1989). And we review issues of law de novo. McCoy v. American Suzuki Motor Corp., 136 Wash.2d 350, 355, 961 P.2d 952 (1988). As a preliminary matter, we must determine what materials the court considered in granting summary judgment.

II. Materials Considered
Dr. Raghu's amended supplemental affidavit, submitted in support of the motion for reconsideration, clarifies and strengthens his previous submissions:[4]
[I]t is more probable than not that Mr. Shellenbarger had pulmonary fibrosis in its earlier stages during 1991, or earlier, to a reasonable degree of medical certainty. The detection of pulmonary fibrosis follows, on a more probable than not basis, therapeutic intervention and management by a pulmonary specialist.
3. X-rays taken in 1987 of Mr. Shellenbarger's chest reveal the presence of interstitial markings in his lungs. Over time, interstitial markings develop into more severe respiratory illness, including pulmonary fibrosis. However, if a patient is given proper treatment, there is a 20% chance that the progression from interstitial markings to severe lung disease, including pulmonary fibrosis, can be slowed.... Based on a reasonable degree of medical certainty, Dr. Brigman's failure to exercise reasonable care, more likely than not, caused a substantial reduction in Mr. Shellenbarger's life expectancy.
Dr. Schoene stated in his affidavit that with proper treatment, patients with interstitial markings in their lungs have a substantial likelihood of delaying the onset of pulmonary fibrosis.
The parties disagree whether the trial court considered these supplemental affidavits in ruling on the motion for summary judgment. The defendants point to the oral ruling on reconsideration where the court said that it was "going to deny the motion for reconsideration, both on the basis of newly discovered evidence and on substantial justice." Shellenbarger relies upon the court's amended order granting ... summary judgment, which states that the court "reviewed and considered ... the following:.... Plaintiffs' Motion for Reconsideration of court's Decision on Motion for Summary Judgment (w/exhibits including Affidavit of Robert Schoene and Amended Supplemental Affidavit of Dr. Ganesh Raghu)" (emphasis added). Our standard of review is controlled by whether the trial court actually considered the supplemental affidavits.
The trial court may consider additional evidence "after a decision on summary judgment has been rendered, but before a formal order has been entered." Meridian Minerals Co. v. King County, 61 Wash.App. 195, 202-03, 810 P.2d 31 (1991). Here, the written order granting summary judgment, which we review on appeal, recites that the trial court considered the supplemental affidavits. And a written order controls over any apparent inconsistency with the court's earlier oral ruling. State v. Eppens, 30 Wash.App. 119, 126, 633 P.2d 92 (1981). Thus the issue is whether Shellenbarger's evidence, including the affidavits submitted when moving for reconsideration, created a genuine issue of material fact. Coggle v. *215 Snow, 56 Wash.App. 499, 509, 784 P.2d 554 (1990).

III. Medical Negligence
To recover damages for negligent medical treatment, the plaintiff must establish that the physician did not comply with the accepted standard of care. RCW 7.70.030(1). Under RCW 7.70.040, a plaintiff must prove:
(1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances;
(2) Such failure was a proximate cause of the injury complained of.
A. Standard of Care:
Expert testimony is required to establish the practices of prudent physicians unless the "evidence is observable by lay persons and describable without medical training." Morinaga v. Vue, 85 Wash.App. 822, 832, 935 P.2d 637 (1997) (citing Harris v. Groth, 99 Wash.2d 438, 449, 663 P.2d 113 (1983)). Here, Shellenbarger offered evidence that Dr. Patterson found radiological evidence of mild interstitial lung disease and reported the finding to Dr. Brigman on September 28, 1987. Shellenbarger repeatedly returned to Dr. Brigman's office complaining of respiratory symptoms from 1987 until 1992. During this time, Dr. Brigman treated him with antibiotics yet the symptoms persisted. Dr. Kirkpatrick treated Shellenbarger similarly between 1992 and 1994. Dr. Raghu opined that a reasonable general practitioner, when presented with Shellenbarger's medical history and symptoms, would have requested follow-up testing and referred him to a pulmonary specialist. Neither Dr. Brigman nor Dr. Kirkpatrick did so. Dr. Raghu opined that this failure over a seven-year period was a breach of the standard of care of a general practitioner or family doctor.
The trial court was correct, therefore, in finding that there was a "material dispute of fact as to whether [Drs. Brigman and Kirkpatrick] were negligent in their treatment of Mr. Shellenbarger." The question then becomes whether Shellenbarger produced evidence that the failure of the doctors to follow the accepted standard of care was a proximate cause of his injury, as required by RCW 7.70.040(2).
B. Proximate Cause:
The issue of proximate cause is generally a question for the jury. Attwood v. Albertson's Food Centers, Inc., 92 Wash.App. 326, 330, 966 P.2d 351 (1998) (citing Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 935, 653 P.2d 280 (1982)). Proximate cause is, however, a question of law for the court if "the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt." Attwood, 92 Wash.App. at 330, 966 P.2d 351. In a medical negligence case, summary judgment is not appropriate if "a reasonable person could infer, from the facts, circumstances, and medical testimony, that a causal connection exists." Attwood, 92 Wash.App. at 330, 966 P.2d 351. But the evidence must "rise above speculation, conjecture, or mere possibility." Attwood, 92 Wash.App. at 331, 966 P.2d 351. "[M]edical testimony must demonstrate that the alleged negligence `more likely than not' caused the later harmful condition leading to injury; that the defendant's actions `might have,' `could have,' or `possibly did' cause the subsequent condition is insufficient." Attwood, 92 Wash.App. at 331, 966 P.2d 351.
Here, Shellenbarger's evidence of proximate cause included the following. Testing and early diagnosis of Shellenbarger's disease would have lead to treatment with Prednisone. And although some patients do not respond to Prednisone, the treatment is more effective if started early. If treatment had started early on, Shellenbarger had a 20% chance that the disease's progress would have been slowed and, accordingly, he would have had a longer life expectancy. In addition, Shellenbarger's lung disease may have been aggravated by continued exposure to inhaled agents at work.
*216 Shellenbarger essentially argues loss of chance of the potential benefits of early evaluation and treatment of his lung disease. Washington recognizes loss of chance as a compensable interest. Herskovits v. Group Health Coop., 99 Wash.2d 609, 664 P.2d 474 (1983). In Herskovits, the court held that a patient's reduced chance of survival from 39% to 25% was sufficient to allow the proximate cause issue to go to the jury. Herskovits, 99 Wash.2d at 619, 664 P.2d 474. The plurality in Herskovits reasoned that the harm caused by the defendant's negligence was not the plaintiff's death, but the reduction in his chance of survival. Herskovits, 99 Wash.2d at 634, 664 P.2d 474. And this harm was present even though plaintiff had less than a 50% chance of surviving the disease with proper treatment. Herskovits, 99 Wash.2d at 610-11, 664 P.2d 474.
Here, Shellenbarger argues not that he lost a chance of survival, but that he lost a 20% chance of slowing the disease. We find no meaningful difference between this and Herskovits' lost chance of survival. If the disease had been slowed, Shellenbarger could expect additional years of life. Similarly, in Herskovits, if the disease had been cured, Herskovits could have expected additional years of life. Presumably the number of additional years could be measured by Herskovits' statistical life expectancy. Similarly, Shellenbarger's additional years of life could either be measured statistically or by the expert testimony of his physicians. But, whether afforded by a cure or by a slowing of the disease, the loss in each case is in length of life.

IV. Informed Consent
The doctrine of informed consent is "premised on the fundamental principle that `[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body.' A necessary corollary to this principle is that the individual be given sufficient information to make an intelligent decision." Smith v. Shannon, 100 Wash.2d 26, 29, 666 P.2d 351 (1983) (citations omitted).
Shellenbarger argues that the defendants' failure to inform him of the interstitial lung disease "proximately caused injury ... in the form of lost opportunities to receive treatment other than antibiotics." The defendants argue, as they did on the negligence claim, that Shellenbarger did not establish that the failure, if any, was a proximate cause of harm to Shellenbarger. We have already held that Shellenbarger produced sufficient evidence of proximate cause to survive summary judgment. And Shellenbarger's informed consent claim is closely related to his negligence claim, i.e. the defendants' failure to tell him of his lung disease deprived him of the opportunity to choose early treatment. It follows that he also produced sufficient evidence of proximate cause on his informed consent claim. Because the parties do not address the issue, we do not decide whether Shellenbarger has an informed consent claim separate from the medical negligence claim.[5]
In conclusion, we hold that Shellenbarger produced sufficient evidence of the defendants' negligence and of proximate cause to raise issues of material fact. We reverse and remand for trial.
MORGAN, J., and HOUGHTON, J., concur.
NOTES
[1] Mrs. Shellenbarger joined in her husband's claims.
[2] Shellenbarger also sued the Internal Medicine Clinic of Longview because Dr. Kirkpatrick was associated with the clinic for the two years he treated Shellenbarger.
[3] The Shellenbargers submitted a brief and two separate declarations by Gerald Shellenbarger. They also attached two letters from Dr. Raghu.
[4] Dr. Raghu's affidavit of May 14 stated only that "in patients such as Mr. Shellenbarger, at the very least, the rate of progression of pulmonary fibrosis may be slowed if the disease is detected and treated at an early stage."
[5] Informed consent and negligence are alternative means of imposing liability on health care providers. Backlund v. University of Washington, 137 Wash.2d 651, 659, 975 P.2d 950 (1999). But failure to diagnose is grounds for a negligence action, not an informed consent claim. See Gustav v. Seattle Urological Associates, 90 Wash.App. 785, 790, 954 P.2d 319 (1998); Thomas v. Wilfac, Inc., 65 Wash.App. 255, 261, 828 P.2d 597 (1992); Bays v. St. Luke's Hospital, 63 Wash.App. 876, 881, 825 P.2d 319 (1992).