IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TAYLOR HUBER, individually; MARVIN HUBER, individually; LISA HUBER, individually, | ) ) ) ) | No. 81631-4-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) ) | |
| | ) | |
| KENT SCHOOL DISTRICT, a municipal corporation; KENDALL R. ANDERSON, JR. and JANE/JOHN DOE ANDERSON individually and the marital community thereof; A.N., a minor individual; JOHN NGUYEN and JANE/JOHN DOE NGUYEN, parents of A.N., individually and the marital community thereof; and JANE JOHN DOE KENT SCHOOL DISTRICT Supervisors and Officials, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) ) | |

HAZELRIGG, J. — Taylor, Marvin, and Lisa Huber seek reversal of an order granting summary judgment for Kent School District and its employee Kendall Anderson. They contend that the trial court erred in dismissing their negligence claim. Because the Hubers did not make a prima facie showing of each of the essential elements of a negligence action, we affirm.

FACTS

On April 19, 2016, a small group of Kentwood High School students, including Taylor Huber and A.N.,[1] were playing touch football during physical education (PE) class. A.N. had learned to play football in his middle and high school PE classes, and Taylor[2] had played touch football on an informal girls' "Powderpuff" team the year before. PE teachers Kendall Anderson and Blake Solomon were standing in the doorway of the gymnasium between the group of students playing touch football on the field and another group that was playing basketball inside. During the football game, A.N. collided with Taylor, breaking her leg.

Taylor and her parents, Marvin and Lisa Huber, filed suit in King County Superior Court against Kent School District, Anderson, A.N., and A.N.'s parents. The Hubers brought claims of negligence, strict liability, and negligent hiring.

Kent School District and Anderson (collectively, KSD) moved for summary judgment on the grounds that the Hubers could not prove causation to support their negligence claim and that their other claims failed as a matter of law. The court granted the motion and dismissed the Hubers' claims of negligence, strict liability, and negligent hiring with prejudice. The Hubers moved for reconsideration of the dismissal of the negligence claims, which was denied.

More than a year later, the court conducted a bench trial on the claims against A.N. and his parents. Taylor and A.N. both testified. The court concluded

[1] Because A.N. was a minor at the time of the incident and is not a party to this appeal, we refer to him by his initials.
[2] For clarity, we will refer to the Hubers individually by their first names. We intend no disrespect.

that A.N. exercised ordinary care and was not negligent and that Taylor assumed the risk of harm by engaging in touch football, a contact sport. The Hubers filed a notice of appeal seeking review of the order granting summary judgment and the order denying their motion for reconsideration. They did not appeal from the bench trial.

ANALYSIS

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). Because we perform the same analysis, we consider only the evidence and issues raised before the trial court. RAP 9.12; Wash. Fed'n of State Emps., Council 28 AFL-CIO v. Office of Fin. Mgmt., 121 Wn.2d 152, 157, 849 P.2d 1201 (1993).

"The purpose of summary judgment is to avoid a useless trial when there is no genuine issue of any material fact. If, however, there is a genuine issue of material fact, a trial is necessary." LaPlante v. State, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). The court views all facts and inferences in favor of the nonmoving party when determining whether an issue of material fact exists. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Id.

The moving party bears the initial burden to show the absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party successfully carries that burden, the burden then shifts

to the non-moving party to set forth specific facts rebutting the moving party's contentions and showing that a genuine issue of material fact exists for trial. Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 351, 144 P.3d 276 (2006); Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 12–13, 721 P.2d 1 (1986). The party opposing summary judgment "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." Seven Gables Corp., 106 Wn.2d at 13. A motion for summary judgment should be granted "only if, from all evidence, reasonable persons could reach but one conclusion." Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). "Where different competing inferences may be drawn from the evidence, the issue must be resolved by the trier of fact." Johnson v. Spokane to Sandpoint, LLC, 176 Wn. App. 453, 457–58, 309 P.3d 528 (2013).

I.     Collateral Estoppel

As a threshold issue, KSD contends that collateral estoppel bars review of the issues raised by the Hubers on appeal.

Collateral estoppel, also known as issue preclusion, "bars relitigation of an issue in a subsequent proceeding involving the same parties." Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). The doctrine "may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding" to ensure that the parties "had a full and fair opportunity to litigate the issue." Id. at 307. For collateral estoppel to apply, the party seeking to use it must establish that "(1) the

issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied." Id.

KSD argues that the trial court's unchallenged findings of fact and conclusions of law from the bench trial against A.N. bar the Hubers' claims on appeal. The Hubers respond that collateral estoppel does not apply because the doctrine requires the existence of two separate actions and there is only one case before this court for review. Even if two actions were not required, the Hubers argue that collateral estoppel would not apply because the issues and parties were not identical.

Application of collateral estoppel is not appropriate here. As noted above, on review of summary judgment, we consider only the materials and issues raised before the trial court on summary judgment. RAP 9.12. The bench trial against A.N. did not occur until more than a year after the trial court decided KSD and Anderson's motion for summary judgment. Because we stand in the shoes of the trial court on review, we do not consider the court's subsequent factual determinations and legal conclusions.

II.    Additional Evidence

KSD also contends that the Hubers' appeal improperly relies on evidence and arguments that were not submitted to the superior court until the Hubers filed their motion for reconsideration. It argues that we should not consider pages 285

to 356 of the clerk's papers (the materials submitted with the motion for reconsideration) and should disregard any portion of the Hubers' appeal that refers to or relies on that section of the record. The Hubers respond that "[t]he evidence and issues identified in Hubers' Motion for Reconsideration were called to the court's attention during summary judgment proceedings" and request that we apply the principle of liberal construction to look past the erroneous citations to the later submitted parts of the record.

Again, the appellate court will consider only the evidence and issues called to the attention of the trial court on review of a summary judgment order. RAP 9.12. To the extent that the materials submitted by the Hubers on reconsideration and cited in their opening brief are duplicative of materials that were before the trial court on summary judgment, we will consider those materials on review. Relying on the principle that decisions on the merits are preferred whenever possible, we decline to reject the Hubers' arguments on this basis. See RAP 1.2.

III.    Summary Judgment

The Hubers contend that the court erred in granting summary judgment on the issue of negligence[3] because they presented a prima facie case of negligence by KSD. The elements of a negligence claim are (1) that the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, (3) injury to the plaintiff resulted, and (4) the defendant's breach was the proximate cause of the injury.[4]  Hoffstatter v. City of Seattle, 105 Wn. App. 596, 599, 20 P.3d 1003

---

[3] The Hubers do not seek review of the dismissal of their claims for strict liability, negligent hiring, or negligent supervision.

[4] The element of damages is not contested.

(2001). To avoid summary judgment on a negligence claim, a plaintiff must make out a prima facie case concerning the essential elements of their claim. Boguch v. Landover Corp., 153 Wn. App. 595, 609, 224 P.3d 795 (2009). At the summary judgment stage, the level of proof required to establish a prima facie case is minimal. Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 152, 279 P.3d 500 (2012). However, "[a] claim of liability resting only on a speculative theory will not survive summary judgment." Marshall v. Bally's Pacwest, Inc., 94 Wn. App. 372, 381, 972 P.2d 475 (1999). "The issues of negligence and proximate cause are generally not susceptible to summary judgment." Ruff v. King County, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). "Whether there has been negligence . . . is a jury question, unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the courts." Hough v. Ballard, 108 Wn. App. 272, 279, 31 P.3d 6 (2001).

"School districts have the duty 'to exercise such care as an ordinarily responsible and prudent person would exercise under the same or similar circumstances.'" N.L. v. Bethel Sch. Dist., 186 Wn.2d 422, 430, 378 P.3d 162 (2016) (quoting Briscoe v. Sch. Dist. No. 123, Grays Harbor County, 32 Wn.2d 353, 362, 201 P.2d 697 (1949)). Because of the custodial relationship between districts and students, the duty of ordinary, reasonable care is "enhanced," and "school districts have a duty 'to anticipate dangers which may reasonably be anticipated, and to then take precautions to protect the pupils in its custody from such dangers.'" Hendrickson v. Moses Lake Sch. Dist., 192 Wn.2d 269, 277, 428 P.3d 1197 (2018) (quoting McLeod v. Grant County Sch. Dist. No. 128, 42 Wn.2d

316, 320, 255 P.2d 360 (1953)). This "includes the duty to protect their students from the foreseeable risk of harm the students may inflict on each other." N.L., 186 Wn.2d at 430. "As long as the harm is 'reasonably foreseeable,' a school district may be liable if it failed to take reasonable steps to prevent that harm." Hendrickson, 192 Wn.2d at 276 (quoting McLeod, 42 Wn.2d at 320). "[T]he danger incurred from playing games inherently dangerous for the age-group involved, or likely to become dangerous if allowed to be engaged in without supervision" is a foreseeable danger from which districts should protect their students. Briscoe, 32 Wn.2d at 362.

To prevail on a claim for negligence, a plaintiff must prove that the alleged breach of duty was a proximate cause of the injury. Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). "A proximate cause is one that in natural and continuous sequence, unbroken by an independent cause, produces the injury complained of and without which the ultimate injury would not have occurred." Attwood v. Albertson's Food Ctrs., Inc., 92 Wn. App. 326, 330, 966 P.2d 351 (1998). There may be more than one proximate cause of an injury. Smith v. Acme Paving Co., 16 Wn. App. 389, 396, 558 P.2d 811 (1976). "The plaintiff need not establish causation by direct and positive evidence, but only by a chain of circumstances from which the ultimate fact required is reasonably and naturally inferable." Attwood, 92 Wn. App. at 331. "Causation is usually a jury question," and it becomes a question of law "only when the causal connection is so speculative and indirect that reasonable minds could not differ." Mehlert v. Baseball of Seattle, Inc., 1 Wn. App. 2d 115, 119, 404 P.3d 97 (2017).

The Hubers appear to argue that Anderson breached his duty of care in two different ways, both resulting in Taylor's injury. First, they contend that Anderson's failure to directly supervise the football game was a proximate cause of the injury because it "started the chain of circumstances resulting in Ms. Huber's injuries." The Hubers argue that their "theory of proximate cause-in-fact is based upon Anderson's own acts and omissions in allowing a group of his students to play a game of touch football without his direct supervision in spite of foreseeable dangers." They argue that A.N.'s negligence or lack thereof is irrelevant because "it was Anderson's negligence that made possible [A.N.]'s collision with Ms. Huber."

KSD responds that the Hubers' theory of causation "is directly defeated by [A.N.]'s deposition testimony that, even if a teacher had been standing on the field, he still would have made a dive to catch the ball." It argues that "no expert can contradict [A.N.] as to his state of mind" and "[a] jury cannot be asked to speculate on this point." KSD also argues that "[n]one of the students claim that the game was 'intense' or that any player was acting in such a way that a teacher's presence on the field would lead them to change their behavior." Therefore, it contends, "the proximity of Coach Anderson is irrelevant."

Although the Hubers point to their expert's opinion that the injury would probably not have occurred if Anderson "had stopped the game and directly supervised" the students, this opinion does not explain how the injury would have been prevented by Anderson's presence on the field. The evidence shows that Anderson was aware of the ongoing football game and that the students were

familiar with the rules of touch football. The Hubers have not pointed to any evidence in the record indicating that Anderson's failure to "directly supervise" the game led to an unsafe game continuing after it should have been stopped. Even assuming that Anderson breached his duty of care by allowing the students to play touch football without supervising from the sidelines, the only evidence in the record indicating that any failure to "directly supervise" the students resulted in Taylor's injury is plainly speculative.

The Hubers also appear to contend that Anderson breached his duty by failing to instruct the students not to dive at other students' legs. They argue that A.N.'s testimony that he would have made the same play if Anderson was on the sideline is not dispositive on the issue of proximate cause, pointing to A.N.'s testimony that he "would have just left the ball and let it hit the ground" if Anderson had specifically told them not to dive for balls around others' legs. However, the Hubers have not established that Anderson breached his duty to exercise reasonable care by failing to instruct the students not to dive to catch balls near the legs of other students. A.N. testified that the teachers told the students to "be safe and [not] hurt anyone." Even if Anderson knew that A.N. tended to make diving catches or "play too hard," reasonable care would not require so specific an instruction.

The Hubers did not present a prima facie case of negligence, and the trial court did not err in granting summary judgment for KSD.[5]

---

[5] Because we find that the Hubers did not present a prima facie case of negligence, we do not consider KSD's alternative argument that the Hubers' claim is barred by implied primary assumption of risk.

Affirmed.

WE CONCUR: