# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JASMINE HORNBEAK,<br><br>    Appellant,<br><br>v.<br><br>KARAMJIT VIRK, D.C. and JANE/JOHN DOE VIRK, husband and wife, and the marital community composed thereof, and VIRK CHIROPRACTIC, P.S., d/b/a SOUTHCENTER CHIROPRACTIC, a Washington corporation,<br><br>    Respondents. | DIVISION ONE<br><br>No. 84371-1-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Jasmine Hornbeak filed a complaint against Karamjit Virk and his chiropractic practice for damages sustained due to a stroke Hornbeak suffered after receiving a chiropractic adjustment from Virk. The trial court granted Virk's motion in limine to exclude Hornbeak's primary expert witness and subsequently granted Virk's motion for summary judgment dismissal of the complaint. Hornbeak appeals, asserting that the trial court incorrectly applied the Frye[1] standard to exclude the expert testimony, which, according to Hornbeak, was admissible pursuant to ER 702. Because summary judgment was appropriate regardless of the motion in limine ruling, we affirm.

---

[1] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

I

In April 2020, Jasmine Hornbeak sued Karamjit Virk and his practice, Virk Chiropractic, Inc., P.S., alleging that his failure to follow the standard of care in the course of her treatment caused a basilar artery thrombosis, vertebral artery dissection, and an ischemic stroke. Hornbeak disclosed the anticipated testimony of two expert witnesses: Dr. Harold Rasmussen, who was expected to testify regarding Virk's negligence in his treatment of Hornbeak, and Dr. David Lundin, who was expected to testify regarding the nature of Hornbeak's injuries, treatment, and prognosis.

After two depositions of Dr. Rasmussen, Virk moved in limine to exclude Dr. Rasmussen's testimony on the grounds that it was speculative and that "his methodology, if any, is not generally accepted in the medical or scientific community pursuant to Frye and its progeny." Hornbeak did not file a response to Virk's motion in limine, and the court granted the motion. Virk subsequently moved for summary judgment, which Hornbeak conceded was appropriate given the exclusion of Dr. Rasmussen's testimony. The trial court granted the motion for summary judgment.

Hornbeak appeals.

II

Hornbeak asserts that the trial court erred by excluding Dr. Rasmussen's testimony and subsequently granting summary judgment dismissal of her complaint. Because summary judgment was appropriate regardless of the court's ruling in limine, we affirm.

2

We review a ruling on summary judgment de novo, considering all inferences in the light most favorable to the nonmoving party. Anderson v. Akzo Nobel Coatings, Inc., 172 Wn.2d 593, 600, 260 P.3d 857 (2011). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c).

RCW 7.70.040(1) authorizes a cause of action for injury resulting "from the failure of [a] health care provider to follow the accepted standard of care." The necessary elements of this cause of action are:

> (a) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;
> (b) Such failure was a proximate cause of the injury complained of.

RCW 7.70.040(1). Proximate cause is defined as a cause "'that in natural and continuous sequence, unbroken by an independent cause, produces the injury complained of and without which the ultimate injury would not have occurred.'" Mehlert v. Baseball of Seattle, Inc., 1 Wn. App. 2d 115, 118, 404 P.3d 97 (2017) (quoting Attwood v. Albertson's Food Ctrs., Inc., 92 Wn. App. 326, 330, 966 P.2d 351 (1998)).

A plaintiff must establish the applicable standard of care and proximate cause, generally by providing expert medical testimony. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). If the plaintiff lacks expert testimony regarding one of the required elements, the defendant is generally entitled to summary judgment on liability. Reyes v. Yakima Health Dist., 191 Wn.2d 79, 86,

419 P.3d 819 (2018). "Expert medical testimony must meet the standard of reasonable medical certainty or reasonable medical probability." Anderson, 172 Wn.2d at 606-07. Such evidence "must rise above speculation, conjecture, or mere possibility." Reese v. Stroh, 128 Wn.2d 300, 309, 907 P.2d 282 (1995).

Here, Dr. Rasmussen opined that Virk breached the standard of care in several ways: by failing to properly document Hornbeak's care, symptoms, and activities of daily living; by failing to perform certain diagnostic tests; by failing to create a treatment plan; and by using certain traction techniques. However, Dr. Rasmussen would not state that any of these breaches of the standard of care were more likely than not to a reasonable medical certainty the cause of Hornbeak's injury.[2] Rather, as to any given breach, Dr. Rasmussen opined only that the breach may have possibly contributed to the injury.

Regarding Virk's breach of the standard of care in his testing practices, Dr. Rasmussen opined that "if you don't do appropriate tests to rule . . . out [a stroke], that can be a direct cause." However, he acknowledged that he could only speculate regarding whether any of the diagnostic testing he recommended would have indicated that there was such an injury. Similarly, regarding breaches of the standard of care in the documentation of Hornbeak's treatment, Dr. Rasmussen opined that information documented by a practitioner could cue the practitioner to perform more diagnostic tests to rule out certain issues. He acknowledged, however, that he did not know whether any information existed

---

[2] The statement of Dr. Rasmussen most closely approximating an indication of causation was his statement that "if you do not do a good job of everything as a practitioner, it's all directly related to the cause."

that could have cued Virk to rule out the possibility of an arterial dissection. Ultimately, when questioned regarding whether any of the identified failures to document could have prevented Hornbeak's injury, Dr. Rasmussen stated, "I'm not going to say probable. I'm going to say possible." Additionally, Dr. Rasmussen opined that the lack of treatment plan and the traction techniques employed by Virk *did not* cause Hornbeak's injury.

Hornbeak's only other expert witness, Dr. Lundin, was expected to testify that the chiropractic manipulation performed by Virk likely caused the injury, but he would not be testifying that it was a deviation from the standard of care. Thus, this testimony would not establish liability.

Given the anticipated expert testimony of Dr. Rasmussen and Dr. Lundin, summary judgment was appropriate. At most, the testimony would have established that Virk breached the standard of care and that his chiropractic manipulation caused Hornbeak's injury. However, no anticipated testimony would have established that any of the breaches of the standard of care proximately caused that injury. The anticipated testimony regarding proximate cause would not "rise above speculation, conjecture, or mere possibility." Reese, 128 Wn.2d at 309. Accordingly, Virk was entitled to summary judgment on liability. Reyes, 191 Wn.2d at 86.[3]

---

[3] Hornbeak also claims on appeal that Dr. Rasmussen's testimony that Virk failed to get informed consent was necessary for an informed consent cause of action. However, Hornbeak never pleaded such a cause of action, nor was the issue "tried by express or implied consent of the parties." CR 15(b). Even if she had, Dr. Rasmussen acknowledged that "reasonably prudent patients" agree to the chiropractic adjustments at issue even with full informed consent. See RCW 7.70.050(1) (necessary element of a claim for failure to secure informed consent is that "a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of" the material facts).

Because summary judgment was appropriate regardless of the trial court's ruling to exclude Dr. Rasmussen's testimony, we need not reach that issue.

Affirmed.

Dwyer, J.

WE CONCUR:

Feldman, J.          Coburn, J.