# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARK DIPAOLO and OREN TOWNSEND, individually, and the marital community thereof,<br><br>Appellant,<br><br>v.<br><br>FAIRMONT OLYMPIC HOTEL SEATTLE, a foreign corporation; and ACCOR MANAGEMENT US, INC., a foreign corporation,<br><br>Respondent. | No. 86071-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Mark DiPaolo brought a slip-and-fall claim against the Fairmont Olympic Hotel Seattle and another defendant, asserting he slipped on a staircase and was injured. DiPaolo's claim was dismissed on summary judgment. Because DiPaolo does not provide sufficient evidence to show without speculation that there was an unreasonably dangerous condition, or that the condition was reasonably foreseeable, the trial court correctly granted summary judgment to the defendants. We affirm.

On November 25, 2019, DiPaolo and his friend Adina Friedman walked to the Fairmont for lunch. The two entered the hotel from Seneca Street, walked up a set of stairs, and entered the lobby. Video surveillance showed the two walk over a carpeted area to the center part of the lobby, and walk up three marble

steps that led to the bar landing, where lunch was being served.[1] DiPaolo placed his left foot on the first marble step, where it slipped and buckled and rotated inward. DiPaolo grabbed the stair railing to brace his fall, and landed on his left side before rolling onto his back. Two Fairmont employees assisted DiPaolo into a wheelchair, before DiPaolo was transported to the hospital emergency room. DiPaolo was diagnosed with a six to seven inch stress fracture on his fibula and two broken bones in his ankle.

DiPaolo sued the Fairmont and Accor Management US Inc. for damages, arguing the Fairmont negligently created an unreasonably dangerous condition and negligently failed to take precautions to protect him from injury. In his deposition, DiPaolo testified that he suspected he fell because "there was something slippery or there was something that was on that particular step that caused [him] to fall." DiPaolo testified he did not know if the floor was wet, did not recall touching wet floor, and did not recall seeing any water or moisture on the floor. DiPaolo testified that he told the emergency room doctor that he had fallen, and explained that "[his] left foot inverted and buckled upon reaching the first step."

The defendants filed a motion for summary judgment, arguing DiPaolo provided no evidence to establish the presence of water on the stairs, or that there was an unreasonable and foreseeable risk of harm of which Fairmont had notice. In response to the motion for summary judgment, DiPaolo submitted a declaration

---

[1] In reviewing a summary judgment order, we construe all evidence and the reasonable inferences therefrom in favor of the nonmoving party, here DiPaolo. Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 217, 224, 522 P.3d 80 (2022). For purposes of this opinion, we consider evidence offered by the Fairmont only where it is not controverted by the evidence offered by DiPaolo.

by Friedman, in which Friedman testified that it was raining on the day of the accident, she and DiPaolo's feet were wet when they entered the Fairmont, and there were no carpets or mats at the entrance. Friedman testified that the stairs "were wet at the time, likely from others that had traveled from the outside like we did," and the stairs were slippery. Friedman testified she did not recall if DiPaolo's clothes were wet but she was certain the floor was wet and that was the reason DiPaolo fell. Friedman further testified she previously visited the Fairmont and told the front desk the floors were slippery "well in advance of [DiPaolo's] fall." The trial court granted the defendants' motion for summary judgment. DiPaolo appeals.

A party seeking summary judgment bears the initial burden to show the absence of a genuine issue of material fact. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). This burden may be met by showing an absence of evidence to support the nonmoving party's burden of proof at trial. Id. at 225 n.1. Then, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. Id. at 225. We review an order granting summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Id. at 226.

A party asserting negligence must establish duty, breach of that duty, causation, and damage. Hansen v. Friend, 118 Wn.2d 476, 479, 824 P.2d 483 (1992). In a premises liability action, a land possessor's duty of care is governed by the entrant's status. Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 128, 875 P.2d 621 (1994). It is undisputed that at the time of his injury DiPaolo was a business invitee of the Fairmont to whom it owed a duty of care. The plaintiff

3

in a slip and fall case has the burden of establishing that the proprietor's negligence was the cause in fact of their injury by showing that the proprietor had actual or constructive knowledge of the specific dangerous condition. Wiltse v. Albertson's Inc., 116 Wn.2d 452, 458-59, 805 P.2d 793 (1991). But, "where the operating procedures of any store are such that unreasonably dangerous conditions are continuous or reasonably foreseeable, there is no need to prove actual or constructive notice." Pimentel v. Roundup Co., 100 Wn.2d 39, 40, 666 P.2d 888 (1983). Thus, to survive summary judgment, DiPaolo must establish the existence of an unsafe condition, Watters v. Aberdeen Recreation, Inc., 75 Wn. App. 710, 714, 879 P.2d 337 (1994), as well as establish notice or an exception to the notice requirement, Pimentel, 100 Wn.2d at 40; Johnson v. Liquor & Cannabis Bd., 197 Wn.2d 605, 622, 486 P.3d 125 (2021).

"Determining whether an unreasonably dangerous condition existed is not automatic. This is especially true for slip and fall cases." Id. at 619. Under Washington case law, the mere presence of some level of water on a floor and the fact of a slip are insufficient on their own to establish the existence of an unsafe condition. Brant v. Mkt. Basket Stores, Inc., 72 Wn.2d 446, 448, 433 P.2d 863 (1967); Merrick v. Sears, Roebuck & Co., 67 Wn.2d 426, 429-30, 407 P.2d 960 (1965). Rather, a plaintiff must further produce evidence "that water would render such a floor, as then and there existed, slippery or dangerous." Brant, 72 Wn.2d at 448.

In Merrick, the plaintiff worked at Sears and used a restroom maintained by the store. 67 Wn.2d at 426-27. In the washroom section of the women's rest room

4

were five toilets in stalls alongside one wall and the opposite wall contained five sinks, each with a liquid soap dispenser. Id. at 427. The washroom floor, composed of small rectangular ceramic tiles, had a drain near the center of the area. Id. While at work one morning, Merrick washed her hands with liquid soap, dried them at a towel rack, and in turning to leave, slipped and fell backwards, hitting her head. Id. While standing back up, Merrick felt water on the floor with her hand. Id. A few hours later, another Sears employee observed not a puddle but a few drops of water on the floor and that the floor lacked the brightness or depth of color as though mopped and rinsed with dirty water. Id. at 427-28. Merrick held, "[N]o inference of negligence can be drawn either from the existence of a few drops of water on the rest room floor as described by one witness or that the floor felt wet to [Merrick's] hand." Id. at 429.

Here, DiPaolo has not established the existence of an unsafe condition without speculation, as there is no evidence he slipped on water. DiPaolo has not ever said he slipped on water, and at the time of his deposition was unable to say water was present on the floor. Furthermore, DiPaolo has described the fall as occurring different from slipping. In his disclosure to his physician, DiPaolo explained that he had fallen and "[his] left foot inverted and buckled upon reaching the first step." Although there is evidence DiPaolo slipped on a marble floor, there is nevertheless no evidence of the amount of water present, the type of marble, nor the effect of water in a given amount on the safety of the particular floor on which DiPaolo slipped. Though Friedman testified she was certain the floor was wet and that was the reason DiPaolo fell, she points to no observed reasons why

she believes he slipped, let alone slipped on water. Even accepting under the summary judgment standard Friedman's observation that water was present, Friedman's belief that the water was the reason for the fall is inadmissible speculation.

DiPaolo also fails to establish that the condition was reasonably foreseeable. In <u>Johnson</u>, the plaintiff sustained injuries after slipping and falling on an allegedly wet entryway to a state liquor store, on a rainy afternoon on which store policy called for putting out a " 'slippery when wet' " sign. 197 Wn.2d at 608-09. The store's entryway had an electronic door with a mat inside, meaning that patrons would walk across about five to six feet of carpet to get inside. <u>Id.</u> at 608. At the time of the plaintiff's fall, the sign had not been put out, and the store clerk testified he was not aware that the area where the plaintiff fell was wet or otherwise hazardous. <u>Id.</u> However, the store clerk testified that rainy days "always" brought muddy footprints into the entryway of the store and customers' feet got wet and the wetness would come into the store with them when it rained, likely due to the lack of an awning over the entryway. <u>Id.</u> at 620. The court concluded this evidence was sufficient to show the "potentially dangerous slippery nature of the entryway." <u>Id.</u>

Unlike in <u>Johnson</u>, in this case there is no evidence of repeated accumulations tied to the weather, such as rainy days "always" bringing muddy footprints or wetness into the hotel or to the marble staircase, <u>id.</u>, or the defendants here having knowledge of any such repeated accumulations. While there is evidence of rainy conditions on the day of the incident, DiPaolo did not indicate

how much rain there was, or how much water accumulated on the floor that day. Furthermore, while the store in <u>Johnson</u> knew of the regular occurrence of dangerous conditions at the store entrance during inclement weather, here there was approximately 24 feet of indoor carpet before reaching the interior stairs and no evidence of the Fairmont knowing of the weather regularly penetrating so far into its interior lobby. We do not read the <u>Johnson</u> foreseeability exception as extending to any presence of any rainwater anywhere inside a building, without some additional evidence tending to indicate its foreseeability in lieu of notice. DiPaolo cannot sustain his burden of proof that an unreasonably dangerous condition was reasonably foreseeable.

Affirmed.

_Birk, J._

WE CONCUR:

_Chung, J._          _Mann, J._