ROBERT BAKER, *Petitioner*, v. THE CITY SEATTLE *et al., Respondents.*

*Levinson, Friedman, Vhugen, Duggan & Bland,* by *Robert D. Duggan,* for petitioner.

*Jack E. Hepfer, Kenneth L. LeMaster,* and *William R. Lanthorn,* for respondents.

WRIGHT, J.—On July 7, 1967, the plaintiff, Robert Baker, went to the Jackson Municipal Golf Course to play golf. The golf course is owned by the City of Seattle. Plaintiff signed a printed form denominated a "Golf Cart Rental Agreement" and took possession of an electric golf cart manufactured by the Ford Motor Company. The cart was owned and leased by the defendants Billingsley who do

business under the trade name of Westweld Metal Works and are engaged in the business of renting out golf carts.

Plaintiff was lessee of the golf cart. When returning the cart, plaintiff alleges the brakes failed and the cart overturned resulting in personal injuries to the plaintiff.

The golf cart rental agreement was as follows:

## GOLF CART RENTAL AGREEMENT

### LESSOR - Westweld Metal Works

GOLF COURSE _____ J A _____ DATE 7/7, 19 67

LESSEE - CUSTOMER _____ Robert R. Baker

ADDRESS _____ 26723 54th Ave W.

CITY - STATE _____ Lynnwood, Wash

CART NO. __ O __ NO. OF HOLES __ 18 __ AMOUNT 3⁶⁶

The above numbered MODEL TEE Golf Cart is hereby leased to the lessee for the number of holes of play on the date and on the golf course indicated above. If Lessee retains said cart after expiration thereof, such retention shall be construed as a new rental at the same rate of rental, and under the same terms and conditions as contained in this agreement. Said cart is not to be removed from the above named golf-course and is to be returned promptly to the Lessor after use. Lessee represents that he is familiar with the use and operation of said cart. Lessee agrees to keep said cart in the Lessee's custody and not to sub-lease or re-rent same. Lessee agrees to keep and return said cart in the same condition as when received. Lessee agrees that in using said cart, he does so at his own risk. It is expressly understood and agreed that the Lessor shall not be liable for any damages whatsoever arising from injuries to the person and/or property damage or loss, of the Lessee arising from the use of, operation of, or in any way connected with said cart or any part thereof, from whatever cause arising. All provisions contained herein constitute the entire and exclusive agreement between the parties. Any promises, representations, understanding and/or agreement pertaining directly or indirectly to the agreement which are not contained herein, are hereby waived. The receipt of the above described cart, in good order and repair, is hereby acknowledged by Lessee.

THIS CART SHALL BE USED SOLELY FOR THE PURPOSES DESIGNED AND NO MORE THAN ONE PERSON AND TWO GOLF BAGS SHALL BE ON SAID CART AT ANY ONE TIME.

3448 _____ (CUSTOMER) - LESSEE

Flatpakit ● Moore Business Forms, Inc.

Although many references are made to, "fine print," the disclaimer of liability is exactly the same size print as the body of the golf cart rental agreement. The disclaimer,

about in the middle of the agreement, would have been observed only by reading the entire agreement.

The primary issue is whether one whose business is regularly, at least in part, the leasing of chattels can avoid liability for injuries to customers by placing a disclaimer clause in a standard form rental agreement.

We held in *Broderson v. Rainier Nat'l Park Co.*, 187 Wash. 399, 60 P.2d 234 (1936), that such an agreement was valid. The *Broderson* case cannot be distinguished from the case at bar. The trial court relied on *Broderson* in granting a summary judgment of dismissal on the basis of the disclaimer clause in the rental agreement. The Court of Appeals relied on *Broderson* in affirming, 2 Wn. App. 1003, 471 P.2d 693 (1970).

■■ We now hold *Broderson v. Rainier Nat'l Park Co.*, *supra*, must be and is hereby expressly overruled, in so far as it holds a plaintiff who has unwittingly signed, "is not thereby relieved from the consequences of his act."

Both the trial court and the Court of Appeals cited *Griffiths v. Henry Broderick, Inc.*, 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947) and *Union Pac. R.R. v. Ross Transfer Co.*, 64 Wn.2d 486, 392 P.2d 450 (1964). These cases are indemnity contracts rather than disclaimer contracts. Neither *Griffiths* nor *Union Pacific* is directly in point.

Public policy dictates that the disclaimer clause placed in the rental agreement in this case is void. In *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 403, 161 A.2d 69 (1960) it was said, in part:

> Public policy is a term not easily defined. Its significance varies as the habits and needs of a people may vary. It is not static and the field of application is an ever increasing one. A contract, or a particular provision therein, valid in one era may be wholly opposed to the public policy of another. See *Collopy v. Newark Eye & Ear Infirmary*, 27 *N.J.* 29, 39, [141 A.2d 276] (1958). Courts keep in mind the principle that the best interests of society demand that persons should not be unnecessarily restricted in their freedom to contract. But they do not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of

the public in some way. *Hodnick v. Fidelity Trust Co.,* 96 *Ind. App.* 342, 183 *N. E.* 488 (*App. Ct.* 1932).

Even though *Henningsen* involved the sale of a chattel, we do not think a proper distinction can be drawn between the lease or rental of a chattel and the sale of a chattel.

The absence of such a distinction was clearly pointed out in the Florida case of *W. E. Johnson Equip. Co. v. United Airlines, Inc.,* 238 So.2d 98 (Fla. 1970):

> The reasons for imposing the warranty of fitness in sales cases are often present in lease transactions. Public policy demands that in this day of expanding rental and leasing enterprises the consumer who leases be given protection equivalent to the consumer who purchases.

Application of the implied warranty of fitness to the lease or bailment for hire situation has received favorable support in many legal periodicals. See, Farnsworth, *Implied Warranties of Quality in Non-Sales Cases,* 57 Colum. L. Rev. 653 (1957); 4 Willamette L.J. 421 (1967); 10 B.C. Ind. & Com. L. Rev. 127 (1968).

The legislature of this state has announced a public policy with regard to disclaimers of liability in commercial transactions by enacting the Uniform Commercial Code, particularly RCW 62A.2-316(2) and RCW 62A.2-719(1), (3) on sales, which provide:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be *conspicuous*, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and *conspicuous*.

(Italics ours.) RCW 62A.2-316(2).

> (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,
>
> . . .
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. *Limitation of consequential damages for injury to the person* in the case of consumer goods is *prima facie*

*unconscionable* but limitation of damages where the loss is commercial is not.

(Italics ours.) RCW 62A.2-719 (1), (3).

In the instant case, the disclaimer was contained in the middle of the agreement and was not conspicuous. To allow the respondent to completely exclude himself from liability by such an inconspicuous disclaimer, would truly be unconscionable.

Having herein overruled *Broderson v. Rainier Nat'l Park Co., supra,* it is unnecessary to consider the other assignments of error.

The judgment of the trial court and of the Court of Appeals is reversed and the matter remanded for trial.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and McGOVERN, JJ., concur.

STAFFORD, J., concurs in the result.