54 P.3d 161 (2002)
113 Wash.App. 442
Michael W. STOKES, Respondent,
v.
BALLY'S PACWEST, INC., a Washington corporation, d/b/a Bally Total Fitness; and Bally Total Fitness Corporation, a foreign corporation, Appellant.
No. 49283-7-I.
Court of Appeals of Washington, Division 1.
September 16, 2002.
*162 Tyna Lee Ek, Merrick Hofstedt & Lindsey, Seattle, WA, for Appellant.
Mark William Davis, Curran Mendoza P.S., Kent, WA, for Respondent.
COX, A.C.J.
Persons may expressly agree in advance of an accident that one has no duty of care to the other, and shall not be liable for ordinary negligence.[1] Such exculpatory agreements are generally enforceable, subject to three exceptions. Because the "waiver and release" language at issue here was conspicuously stated in the agreement that Michael Stokes signed, we reverse both summary judgment orders and direct entry of summary judgment in favor of Bally's Pacwest Total Fitness Center on remand.
Stokes joined Bally's, a health club. He signed a retail installment contract that evidenced the terms and conditions of membership. The contract contained the waiver and release provisions at issue in this appeal. Several months after signing the agreement, Stokes slipped on a round metallic plate placed in a wooden floor at the club while playing basketball. He injured his knee and shoulder. Stokes sued Bally's, alleging that the health club's negligence caused him serious, painful, and permanent injuries. Bally's moved for summary judgment, which the trial court denied. According to the trial court, there were "material questions of fact whether the `Waiver and Release' provisions set forth in the Retail Installment Contract [that Stokes signed], were sufficiently conspicuous or knowingly consented to by [him]."
*163 We granted discretionary review of that decision. Pursuant to RAP 7.2,[2] we also granted Bally's permission to renew its summary judgment motion in the trial court in order to allow that court to consider this court's then recent decision in Chauvlier. Following Bally's renewed motion, the trial court again denied summary judgment for the same reason that it did before.
Our review of the denial of a summary judgment motion is de novo.[3] Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[4] A material fact is one upon which the outcome of the litigation depends.[5] Summary judgment is proper when reasonable minds could reach but one conclusion regarding the material facts.[6] The facts and reasonable inferences from the facts are considered in the light most favorable to the nonmoving party.[7] Questions of law are reviewed de novo.[8]
Accordingly, Stokes' argument that the "obvious or probable error" standard set out in RAP 2.3(b) governs our review at this stage is simply wrong. That rule is directed to discretionary review, not review of denial of summary judgment.
We now focus our attention on the two orders before us. To prevail on his ordinary negligence claim against Bally's, Stokes must establish that the health club owed him a duty.[9] Whether such a duty exists is a question of law.[10] As we recently noted in Chauvlier, our Supreme Court has recognized the right of parties, subject to certain exceptions, to expressly agree in advance that one party is under no obligation of care to the other, and shall not be held liable for ordinary negligence.[11]
The general rule in Washington is that such exculpatory clauses are enforceable unless (1) they violate public policy; (2) the negligent act falls greatly below the standard established by law for protection of others; or (3) they are inconspicuous.[12] Neither of the first two of these exceptions is at issue here. The trial court expressly relied on only the third exception in making its rulings, denying summary judgment on the ground that a genuine issue of material fact existed whether the waiver and release clause was inconspicuous.
This court will not uphold an exculpatory agreement if "the releasing language is so inconspicuous that reasonable persons could reach different conclusions as to whether the document was unwittingly signed."[13] Conversely, where reasonable persons could only reach the conclusion that the release language is conspicuous, there is no question of the document having been unwittingly signed. Whether Stokes subjectively unwittingly *164 signed the form is not at issue. Rather, the question is whether, objectively, the waiver provision was so inconspicuous that it is unenforceable.
As we stated in Chauvlier, a person who signs an agreement without reading it is generally bound by its terms as long as there was ample opportunity to examine the contract and the person failed to do so for personal reasons.[14] Here, Stokes admitted that he did not remember reading the waiver and release provision of the contract. But this admission does not end our review. We must still determine whether the waiver and release language is inconspicuous so as to invalidate Stokes' release of Bally's from any duty to him for its alleged ordinary negligence.
We most recently considered whether a release was inconspicuous and unwittingly signed in Chauvlier. The release in that case was printed on a ski pass application.[15] Comparing the release to those considered in Baker and Hewitt v. Miller,[16] we held that the release was sufficiently conspicuous to be enforceable. We noted that the release was not hidden within part of a larger agreement, and that it was clearly entitled "LIABILITY RELEASE & PROMISE NOT TO SUE. PLEASE READ CAREFULLY!." We also noted that the words "RELEASE" and "HOLD HARMLESS AND INDEMNIFY" were set off in capital letters throughout the agreement, and that the release contained the language, just above the signature line, "Please Read and Sign: I have read, understood, and accepted the conditions of the Liability Release printed above."[17]
At the other end of the spectrum of reported cases is Baker. There, our Supreme Court held that a disclaimer in a golf cart rental agreement, consisting of several lines of release language printed in the middle of a paragraph discussing other information, was so inconspicuous that enforcement of the release would be unconscionable.[18]
In McCorkle, another division of this court held that a trial court erred in granting summary judgment on McCorkle's negligence claims against a fitness club. The holding was that there were genuine issues of material fact whether a liability statement contained in a membership application McCorkle signed was sufficiently conspicuous.[19]
The provision at issue in that case had as a heading "LIABILITY STATEMENT." In the first few sentences, the provision declared that the member accepted liability for damages that the member or the member's guests caused. The last sentence of the provision stated that the member waived any claim for damages as a result of any act of a Club employee or agent. And nothing in the document alerted the reader to the shift in the liability discussion from liability of the member to waiver of liability for claims against the Club.
The parties now before us cite to other cases, Hewitt and Conradt v. Four Star Promotions.[20] Both are factually distinguishable. In each of those cases, the waiver and release form was in a separate document, not a separate provision in one document.[21]
Here, the release is more like that in Chauvlier and unlike that in Baker or McCorkle. In our view, reasonable minds could not differ regarding whether the waiver and release provisions in this retail installment sales contract were so inconspicuous that it was unwittingly signed. The language is conspicuous, as a matter of law, and it was not unwittingly signed.
The release provision in this retail installment contract, which Stokes signed, must be *165 read in context. Several lines above Stokes' signature is a section in bold type, which states:

NOTICE TO BUYER: (a) Do not sign this Contract before you read it or if any of the spaces intended for the agreed terms, except as to unavailable information, are blank....
THIS IS A RETAIL INSTALLMENT CONTRACT, THE RECEIPT OF AN EXECUTED COPY OF WHICH, AS WELL AS A COPY OF THE CLUB RULES AND REGULATIONS AND A WRITTEN DESCRIPTION OF THE SERVICES AND EQUIPMENT TO BE PROVIDED, IS HEREBY ACKNOWLEDGED BY THE BUYER.[22]
Immediately following Stokes' signature is a line, starting in bold and capital letters, stating: "WAIVER AND RELEASE: This contract contains a WAIVER AND RELEASE in Paragraph 10 to which you will be bound."[23]
Paragraph 10, which is expressly referenced in the line directly below Stokes' signature, is entitled "WAIVER AND RELEASE." It states as follows:
You (Buyer, each Member and all guests) agree that if you engage in any physical exercise or activity or use any club facility on the premises, you do so at your own risk. This includes, without limitation, your use of the locker room, pool, whirlpool, sauna, steamroom, parking area, sidewalk or any equipment in the health club and your participation in any activity, class, program or instruction. You agree that you are voluntarily participating in these activities and using these facilities and premises and assume all risk of injury to you or the contraction of any illness or medical condition that might result, or any damage, loss or theft of any personal property. You agree on behalf of yourself (and your personal representatives, heirs, executors, administrators, agents and assigns) to release and discharge us (and our affiliates, employees, agents, representatives, successors and assigns) from any and all claims or causes of action (known or unknown) arising out of our negligence. This Waiver and Release of liability includes, without limitation, injuries which may occur as a result of (a) your use of any exercise equipment or facilities which may malfunction or break, (b) our improper maintenance of any exercise equipment or facilities, (c) our negligent instruction or supervision, and (d) you slipping and falling while in the health club or on the premises. You acknowledge that you have carefully read this Waiver and Release and fully understand that it is a release of liability. You are waiving any right that you may have to bring a legal action to assert a claim against us for our negligence.
Unlike the waiver provisions in Baker and McCorkle, this paragraph discusses only Stokes' agreement to release Bally's from liability for its negligence. Stokes' argument that he believed that the paragraph somehow related to release from liability for his financial obligations under the retail installment sale agreement is wholly unpersuasive. As our Supreme Court stated in National Bank, it "would be impossible for a person of ordinary intelligence, much less a person of the intelligence and ability of appellant, to have misunderstood the contents of this instrument upon a casual reading thereof ..."[24] The same principle applies here. Reasonable persons could not disagree that the content of paragraph 10 is quite clearly a waiver and release of liability for negligence, not financial obligations. Likewise, reasonable persons could not disagree that the waiver and release provisions of the paragraph are conspicuously displayed within the larger document.
Stokes also argues that an exculpatory provision may be placed in a document separate from the retail installment sales agreement, but concedes that this is not required.[25] Bally's counters that RCW *166 63.14.020[26] and other laws require that the exculpatory clauses and financial terms and conditions between a health club and its members all must be within one document.
We need not decide in this case whether Bally's' argument is correct. It is sufficient to state that no authority supports the proposition that an exculpatory clause must be contained in a separate document to be enforceable. Rather, what is required is that the release language in a document be conspicuous.
The language at issue in this case is conspicuous and enforceable. Bally's owes no duty to Stokes for his injuries. Summary judgment in favor of Bally's is required.
We reverse both summary judgment orders, and direct entry of summary judgment in favor of Bally's on remand.
GROSSE, J., and SCHINDLER, J., concur.
NOTES
[1] Chauvlier v. Booth Creek Ski Holdings, Inc., 109 Wash.App. 334, 339, 35 P.3d 383 (2001).
[2] RAP 7.2(a) provides in part, "[a]fter review is accepted by the appellate court, the trial court has authority to act in a case only to the extent provided in this rule, unless the appellate court limits or expands that authority. ..." (italics ours).
[3] Sea-Pac Co., Inc. v. United Food and Commercial Workers Local Union 44, 103 Wash.2d 800, 802, 699 P.2d 217 (1985); Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999).
[4] Hertog, 138 Wash.2d at 275, 979 P.2d 400 (citation omitted).
[5] Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 279, 937 P.2d 1082 (1997).
[6] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[7] Hertog, 138 Wash.2d at 275, 979 P.2d 400 (citation omitted).
[8] Hertog, 138 Wash.2d at 275, 979 P.2d 400 (citation omitted).
[9] Chauvlier, 109 Wash.App. at 339, 35 P.3d 383 (citing Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 128, 875 P.2d 621 (1994)).
[10] Chauvlier, 109 Wash.App. at 339, 35 P.3d 383 (citing Tincani, 124 Wash.2d at 128, 875 P.2d 621).
[11] Chauvlier, 109 Wash.App. at 339, 35 P.3d 383.
[12] Scott v. Pacific West Mountain Resort, 119 Wash.2d 484, 492, 834 P.2d 6 (1992) (citations omitted).
[13] Chauvlier, 109 Wash.App. at 341, 35 P.3d 383 (citing McCorkle v. Hall, 56 Wash.App. 80, 83, 782 P.2d 574 (1989) (citing Baker v. City of Seattle, 79 Wash.2d 198, 200, 484 P.2d 405 (1971), review denied, 114 Wash.2d 1010 (1990))).
[14] Chauvlier, 109 Wash.App. at 341, 35 P.3d 383 (citing Nat'l Bank of Wash. v. Equity Investors, 81 Wash.2d 886, 913, 506 P.2d 20 (1973)).
[15] Chauvlier, 109 Wash.App. at 337, 35 P.3d 383.
[16] 11 Wash.App. 72, 521 P.2d 244, review denied, 84 Wash.2d 1007 (1974).
[17] Chauvlier, 109 Wash.App. at 342, 35 P.3d 383.
[18] Baker, 79 Wash.2d at 202, 484 P.2d 405.
[19] McCorkle, 56 Wash.App. at 84, 782 P.2d 574.
[20] 45 Wash.App. 847, 728 P.2d 617 (1986).
[21] Hewitt, 11 Wash.App. at 78-80, 521 P.2d 244; Conradt, 45 Wash.App. at 850, 728 P.2d 617.
[22] (Italics ours.)
[23] (Italics ours.)
[24] Nat'l Bank of Wash., 81 Wash.2d at 913, 506 P.2d 20.
[25] Respondent's Brief at 14.
[26] RCW 63.14.020 states that "[e]very retail installment contract shall be contained in a single document which shall contain the entire agreement of the parties including any promissory notes or other evidences of indebtedness between the parties relating to the transaction...." The statute allows a number of exceptions to this rule, none of which applies to this case.