COURT OF APPEALS, STATE OF WASHINGTON, DIVISION III

| | | |
|---|---|---|
| ROBIN JOHNSON and CRAIG JOHNSON, wife and husband, and the marital community composed thereof, | ) ) ) ) | No. 31042-6-III<br><br>ORDER GRANTING MOTION TO PUBLISH |
| Appellants, | ) | |
| v. | ) | |
| | ) | |
| SPOKANE TO SANDPOINT, LLC, a Washington corporation, | ) ) | |
| | ) | |
| Respondents. | ) | |

The court has considered respondents' and William Hickman's motions to publish the court's opinion of July 23, 2013, and the record and file herein, and is of the opinion the motions to publish should be granted. Therefore,

IT IS ORDERED the motions to publish are granted. The opinion filed by the court on July 23, 2013, shall be modified on page 1 to designate it is a published opinion and on page 10 by deletion of the following language:

> The majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

No. 31042-6-III
*Johnson v. Spokane to Sandpoint*


DATED: 9/10/13

PANEL: Jj. Brown, Korsmo, Siddoway

FOR THE COURT:

_____
KEVIN M. KORSMO
CHIEF JUDGE

-2-

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROBIN JOHNSON and CRAIG JOHNSON, Wife and Husband, and the marital community composed thereof, | ) ) ) ) ) | No. 31042-6-III |
| Appellants, | ) ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| SPOKANE TO SANDPOINT, LLC, a Washington corporation; MADILYN K. YOUNG a single woman; DARREN YOUNG and TANYA YOUNG, Husband and Wife, and the marital community composed thereof, | ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) | |

BROWN, J. — Robin Johnson and Craig Johnson appeal the dismissal of their personal injury suit against Spokane to Sandpoint, LLC after the trial court ruled the preinjury release and waiver Ms. Johnson signed precluded recovery. The Johnsons contend the release is unenforceable because it is ambiguous, offends public policy, and because Spokane to Sandpoint was grossly negligent. We disagree and affirm.

FACTS

Spokane to Sandpoint promotes a long-distance relay race from the Spokane area to Sandpoint, Idaho involving teams running a 185-mile course over two days, day and night. The course is open, meaning it is not closed to public traffic.

When registering online, the runners must electronically acknowledge a release of liability and waiver, which states:

> I understand that by registering I have accepted and agreed to the waiver and release agreement(s) presented to me during registration and that these documents include a release of liability and waiver of legal rights and deprive me of the right to sue certain parties. By agreeing electronically, I have acknowledged that I have both read and understood any waiver and release agreement(s) presented to me as part of the registration process and accept the inherent dangers and risks which may or may not be readily foreseeable, including without limitation personal injury, property damage or death that arise from participation in the event.

Clerk's Papers (CP) at 246. Ms. Johnson, an attorney, registered online for the 2010 Spokane to Sandpoint race and acknowledged the above waiver, plus she agreed to *"waive and release Spokane to Sandpoint . . . from any and all claims or liability of any kind arising out of my participation in this event, even though that liability may arise out negligence or carelessness on the part of persons on this waiver."* CP at 246. Ms. Johnson agreed she read the agreement carefully and understood the terms and she signed the agreement, "FREELY AND VOLUNTARILY, WITHOUT ANY INDUCEMENT, ASSURANCE OR GUARANTEE" and that her signature was "TO SERVE AS

2

No. 31042-6-III
*Johnson v. Spokane to Sandpoint, LLC*

CONFIRMATION OF MY COMPLETE AND UNCONDITIONAL ACCEPTANCE OF THE TERMS, CONDITIONS, AND PROVISIONS OF THIS AGREEMENT." CP at 248.

Spokane to Sandpoint provided a race handbook to Ms. Johnson, explaining all facets of the race, including crossing public highways and train tracks. The fourth leg of the race crossed Highway 2 at its intersection with Colbert Road. At that location, Highway 2 is a divided highway that runs north and south. It has two lanes in each direction, separated by a median strip. A sign was posted on Colbert Road telling the runners "caution crossing highway." CP at 128. Signs were posted along the race route informing drivers that runners were running along the race route roads.

As Ms. Johnson was crossing Highway 2, Madilyn Young was driving about 63 miles per hour southbound in the outside lane on Highway 2 approaching the Colbert Road intersection. According to Ms. Young's statement to the police, she saw Ms. Johnson crossing the northbound lanes of Highway 2 and saw her continue into the southbound lanes without looking for cars. Ms. Young was unable to stop in time to avoid a collision. Ms. Johnson suffered severe injuries.

The Johnsons sued Spokane to Sandpoint, Ms. Young, and Ms. Young's parents. The Johnsons dismissed their claims against Ms. Young and her parents following a settlement.

During Ms. Johnson's deposition, counsel for Spokane to Sandpoint asked her if she understood that the release she signed "would . . . release the entities for any personal injury that might occur to you during the activity?" CP at 138. Ms. Johnson

3

replied, "Yes, I understand that from a legal perspective completely." CP at 139. When

questioned about the online registration process, counsel asked:

> Q. Do you recall whether you clicked yes to the
> waiver language at all on the registration process?
> A. On the registration process I assume I must have
> clicked because all that information is there and I
> did it. Nobody else did it for me.

CP at 156.

Spokane to Sandpoint requested summary judgment dismissal, arguing the

preinjury waiver and release agreed to by Ms. Johnson was conspicuous and not

against public policy and the Johnsons lacked the evidence of gross negligence

necessary to overcome the release. The trial court agreed and dismissed the

Johnsons' complaint.

ANALYSIS

The issue is whether the trial court erred in summarily dismissing the Johnsons'

negligence complaint. The Johnsons contend the release and waiver signed by Ms.

Johnson prior to her injury was invalid and unenforceable because it was ambiguous

and against public policy, and because Spokane to Sandpoint was grossly negligent.

We review summary judgment de novo and engage in the same inquiry as the

trial court. *Heath v. Uraga*, 106 Wn. App. 506, 512, 24 P.3d 413 (2001). Summary

judgment is appropriate if, in view of all the evidence, reasonable persons could reach

only one conclusion. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992).

Where different competing inferences may be drawn from the evidence, the issue must

be resolved by the trier of fact. *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 739, 904 P.2d 793 (1995).

To prevail on a negligence claim against Spokane to Sandpoint, the Johnsons must establish Spokane to Sandpoint owed them a duty. *Chauvlier v. Booth Creek Ski Holdings, Inc.*, 109 Wn. App. 334, 339, 35 P.3d 383 (2001) (citing *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994)). Whether such a duty exists is a question of law. *Id.* The parties may, subject to certain exceptions, expressly agree in advance that one party is under no obligation of care to the other, and shall not be held liable for ordinary negligence. *Chauvlier*, 109 Wn. App. at 339.

The function of a waiver provision is "to deny an injured party the right to recover damages from the person negligently causing the injury." *Scott v. Pac. W. Mountain Resort*, 119 Wn.2d 484, 491, 834 P.2d 6 (1992). The general rule in Washington is that a waiver provision is enforceable unless (1) it violates public policy, (2) the negligent act falls greatly below the legal standard for protection of others, or (3) it is inconspicuous. *Stokes v. Bally's Pacwest, Inc.*, 113 Wn. App. 442, 445, 54 P.3d 161 (2002).

In Washington, contracts releasing liability for negligence are valid unless a public interest is involved. *Hewitt v. Miller*, 11 Wn. App. 72, 521 P.2d 244 (1974). Six factors are considered in determining whether exculpatory agreements violate public policy. The court considers whether (1) the agreement concerns an endeavor of a type generally thought suitable for public regulation; (2) the party seeking exculpation is engaged in performing a service of great importance to the public, which is often a

5

matter of practical necessity for some members of the public; (3) such party holds itself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards; (4) because of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks the services; (5) in exercising a superior bargaining power, the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence; and (6) the person or property of members of the public seeking such services must be placed under the control of the furnisher of the services, subject to the risk of carelessness on the part of the furnisher, its employees or agents. *Wagenblast v. Odessa Sch. Dist. 105-157-166J*, 110 Wn.2d 845, 851-55, 758 P.2d 968 (1988) (citing *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 32 Cal. Rptr. 33, 383 P.2d 441 693 (1963)). The Johnsons fail to establish all six factors.

First, 185-mile relay races are not regulated; second, Spokane to Sandpoint is not performing an important public service such as a school; third, not all members of the public participate in relay races, unlike schools; fourth, Spokane to Sandpoint had no control over how Ms. Johnson ran or when she decided to cross Highway 2; fifth there was no inequality of bargaining since Ms. Johnson could have easily chosen not to participate and could have selected a different event; and sixth, while Spokane to

6

Sandpoint set up the course, it did not control in what manner Ms. Johnson ran the race.

Washington courts have not favored finding a public interest in adult recreational activities. As noted in *Hewitt*, 11 Wn. App. at 74, "[e]xtended discussion is not required to conclude that instruction in scuba diving does not involve a public duty." Similarly, "[a]lthough a popular sport in Washington, mountaineering, like scuba diving, does not involve public interest." *Blide v. Rainier Mountaineering, Inc.*, 30 Wn. App. 571, 574, 636 P.2d 492 (1981). Washington courts have come to the same conclusion regarding tobogganing and demolition car racing. *Broderson v. Rainer Nat. Park Co.*, 187 Wash. 399, 406, 60 P.2d 234 (1936), *overruled in part by Baker v. City of Seattle*, 79 Wn.2d 198, 484 P.2d 405 (1971); *Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 853, 728 P.2d 617 (1986).

A preinjury waiver and release will not exculpate a defendant from liability for damages resulting from gross negligence. *Vodopest v. MacGregor*, 128 Wn.2d 840, 853, 913 P.2d 779 (1996). "Gross negligence" is "negligence substantially and appreciably greater than ordinary negligence," i.e., "care substantially or appreciably less than the quantum of care inhering in ordinary negligence." *Nist v. Tudor*, 67 Wn.2d 322, 331, 407 P.2d 798 (1965); *see* 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 10.07 (6th ed. 1997) ("gross negligence" is "the failure to exercise slight care."). A plaintiff seeking to overcome an exculpatory clause by proving gross negligence must supply "substantial evidence" that the defendant's act or

7

omission represented care appreciably less than the care inherent in ordinary

negligence. *Boyce v. West,* 71 Wn. App. 657, 665, 862 P.2d 592 (1993). To meet this

burden of proof on summary judgment, the plaintiff must offer something more

substantial than mere argument that the defendant's breach of care arises to the level of

gross negligence. CR56(e); *Boyce,* 71 Wn. App. at 666.

Spokane to Sandpoint marked the roadways to warn both drivers and runners of

danger and provided a handbook to each runner advising about crossing busy

roadways and highways. Nothing in this record establishes any duty to do more.

Our case is somewhat like *Conradt* where Mr. Conradt was hurt in an auto race.

45 Wn. App. at 848. He signed a release before being told of a change in the race

direction. *Id.* Mr. Conradt argued the risk had been materially altered by that change

after he signed the release. *Id.* at 850. He explained he could not corner as well and

he had not understood the additional risk. *Id.* The race promoter requested summary

judgment based on the release. *Id.* at 848. The trial court dismissed Mr. Conradt's

complaint, finding the release was valid and the promoter's action did not amount to

gross negligence. *Id.* at 852. The *Conradt* court affirmed, holding the promoter's

"conduct was not so substantially and appreciably substandard that it rendered the

release invalid." *Id.* at 852.

Similarly, the Johnsons fail to show Spokane to Sandpoint committed gross

negligence by failing to exercise slight care. *See Woody v. Stapp,* 146 Wn. App. 16, 22,

189 P.3d 807 (2008) (when a standard of proof is higher than ordinary negligence, the

nonmoving parties must show that they can support their claim with *prima facie* proof supporting the higher level of proof.). Spokane to Sandpoint's conduct does not reach gross negligence under the circumstances presented here.

Finally, the Johnsons argue the release was ambiguous and not conspicuous. Several Washington courts have analyzed waiver provisions to determine whether the language was conspicuous. Factors in deciding whether a waiver and release provision is conspicuous include: whether the waiver is set apart or hidden within other provisions, whether the heading is clear, whether the waiver is set off in capital letters or in bold type, whether there is a signature line below the waiver provision, what the language says above the signature line, and whether it is clear that the signature is related to the waiver. *See Baker*, 79 Wn.2d at 202; *McCorkle v. Hall*, 56 Wn. App. 80, 83, 782 P.2d 574 (1989); *Chauvlier*, 109 Wn. App. at 342; *Stokes*, 113 Wn. App. at 448.

The release executed by Ms. Johnson online clearly sets apart the release language in either italicized letters or in all capital letters or both. The document was conspicuous with a header stating, "WAIVER AND RELEASE OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT." CP at 246. The waiver repeatedly warned Ms. Johnson that she was giving up her legal rights by signing the waiver, with this clearly indicated above the signature line. Although the Johnsons argue the waiver was ambiguous and, therefore inconspicuous, Ms. Johnson (an attorney) acknowledged in her deposition that from a "legal perspective" she understood the release she signed "would . . . release the entities for any personal injury that might

9

No. 31042-6-III
*Johnson v. Spokane to Sandpoint, LLC*

occur . . . during the activity." CP at 138-39. Thus, no genuine issues of material fact remain regarding ambiguity or conspicuousness.

Given our analysis, we hold reasonable minds can reach but one conclusion; the preinjury release and waiver signed by Ms. Johnson precludes her from claiming an ordinary negligence duty by Spokane to Sandpoint, thus preventing her from seeking liability damages for her injuries. The trial court correctly concluded likewise in summarily dismissing the Johnsons' complaint.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Korsmo, C.J.

Siddoway, J.

10