# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CAROL J. McCOY, a single person, | No. 54400-8-II |
| Respondent, | |
| v. | |
| PFWA LACEY, LLC, a Washington limited company, dba PLANET FITNESS, | UNPUBLISHED OPINION |
| Petitioner, and | |
| BRUNSWICK CORPORATION, a foreign corporation, | |
| Defendant. | |

VELJACIC, J. — Carol McCoy brought suit against Planet Fitness—Lacey for negligence after she was injured using a fitness machine. Planet Fitness filed a motion for summary judgment, arguing that McCoy was precluded from bringing suit because she signed a membership agreement that contained a liability waiver provision.[1] McCoy argued that the waiver was inconspicuous and that she was not given an opportunity to read the membership agreement.

The court denied Planet Fitness's motion, determining that material issues of fact remained regarding whether McCoy unwittingly signed the waiver provision because it was inconspicuous.

---

[1] Alternatively, the parties and witnesses refer to the "membership agreement" as "the documents" and "the contract." We will refer to it as the "membership agreement" throughout this opinion. The liability waiver provision is contained within the membership agreement. Throughout the remainder of this opinion, we will refer to this provision simply as the "waiver provision."

Planet Fitness appeals. We reverse the order denying summary judgment because the waiver provision was conspicuous and McCoy did not demonstrate an issue of material fact bearing on whether she was provided an opportunity to read the membership agreement.

FACTS

On February 1, 2016, McCoy entered into a membership agreement at Planet Fitness in Lacey. The first page of the two-page membership agreement begins with a section covering personal information, membership rate, and financial terms of the membership. The final sentence of this section states, "Cancellation & Billing Policies: I have read and understand the cancellation rights and billing policies on the front and back of this agreement," followed by McCoy's signature/initials. Clerk's Papers (CP) at 25. Below McCoy's signature/initials is a large box marked "PAYMENT AUTHORIZATION" with McCoy's bank account information, and her signature after the paragraph authorizing a monthly membership fee payment.

The waiver provision is found below the payment authorization box, a little more than halfway down the first page of the agreement.

CP at 25.

Below a dark line is a banner containing the bolded, capitalized words "RELEASE OF LIABILITY," "ASSUMPTION OF RISK," "CLUB RULES," and "BUYER'S NOTICE &

RIGHT TO CANCEL." CP at 25. Directly below that banner is a paragraph in the same small sized font as the majority of the agreement that enumerates the waiver of legal rights. The waiver provision states that certain risks are inherent in physical activity and that the signer understands and voluntarily accepts responsibility for risk of injury or loss arising from the use of Planet Fitness facilities. It goes on to state twice that the member agrees that Planet Fitness is not liable for injury resulting from negligent conduct or omission of Planet Fitness or anyone acting on its behalf. The second paragraph of the waiver provision reads:

> I understand that I am not obligated to sign this agreement and should not do so if there are any unfilled blanks. I understand my right of cancellation and the billing and refund policies. I understand my release of liability, assumption of risk and agreement to indemnify, defend and hold harmless and I have been given the opportunity to review and ask questions related to my use of facilities . . . and other equipment. . . . I agree to comply with Planet Fitness' membership policies and club rules. . . . Planet fitness may, in its sole discretion, modify any policy or club rule at any time and from time to time without advance notice. Planet Fitness reserves the right, in its sole discretion, to refund the pro-rated cost of unused services. . . . By signing below, I acknowledge and agree to all of the terms contained on the front and back of this agreement.

CP at 25.

McCoy's signature appears immediately below this paragraph, next to a Planet Fitness authorized signature.

Bold, capital letters at the bottom of the first page and underneath the signature line discuss the nonrefundable initiation fee, then an acknowledgement of receipt of a written description of the health studio services and equipment and a complete copy of the rules on separate lines, followed by lines for initials. Finally, the page details, again in bold capital letters, the process for cancellation of the membership agreement. The second page of the agreement has a large bold heading that reads "PLEASE READ AND UNDERSTAND THIS AGREEMENT BEFORE SIGNING." CP at 26. The remaining language of the contract is immaterial to this appeal.

In July 2016, McCoy fell from a stair stepper machine at Planet Fitness. She alleged that the emergency stop button failed to stop the machine, causing her injury. In January 2019, McCoy filed an amended complaint, naming Planet Fitness and the manufacturer of the machine, the Brunswick Corporation,[2] as defendants. She alleged claims of negligence and failure to provide a safe product.

Planet Fitness filed a motion for summary judgment, arguing in part that McCoy had signed an enforceable liability waiver. In support of its motion, it provided a copy of the membership agreement as well as excerpts from a transcript of McCoy's deposition testimony. In her deposition, when shown the membership agreement, McCoy stated that she did not remember seeing the membership agreement before and that she did not remember signing it.

McCoy responded to the motion, arguing that the waiver provision in the membership agreement was inconspicuous and ambiguous, and because McCoy was not given an opportunity to read or review the agreement, it was unwittingly signed. In a supporting declaration, McCoy recalled the day she signed the membership agreement:

> 3. I was there for a short time, and I spoke to a person who appeared to be the manager, or at least was working behind the desk, who presented me with some documents to sign. He identified these documents as mere formalities and that I had to sign them in order to join the club. He showed me where to sign on a couple documents and I signed them, but I was not given an opportunity to read all the language, and when I mentioned that, he told me he would send me copies of these documents in the mail to my home address. He never did.
> 4. What little I could see of the documents was in very fine, small print which I could not read, at least on one of the documents, and the first time I saw the documents was at my deposition. I did not have time to read them at my deposition and I would have had difficulty anyway because the print was so small.
> . . . .
> As I said, the only direction I got from the person who was working behind the counter was to "sign here" and I did. He immediately took the documents back and told me that he would mail them to me, but I never received copies in the mail so I

---

[2] The claims against Brunswick are not at issue in this appeal.

4

never really had an opportunity to review them before the incident occurred, or any time afterwards.

CP at 140-41.

In reply, Planet Fitness argued that the waiver provision was conspicuous under Washington law, and provided a screen shot of an undated e-mail from Planet Fitness to McCoy with a copy of McCoy's signed membership agreement attached.

The court denied Planet Fitness's motion for summary judgment. Planet Fitness filed a motion for reconsideration, which the court also denied. We granted Planet Fitness's motion for discretionary review.

ANALYSIS

I.      STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Chauvlier v. Booth Creek Ski Holdings, Inc*., 109 Wn. App. 334, 338, 35 P.3d 383 (2001). On a motion for summary judgment, we view all evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 338-39. Where different competing inferences may be drawn from the evidence, the issue must be resolved by the trier of fact. *Kuyper v. Dep't. of Wildlife*, 79 Wn. App. 732, 739, 904 P.2d 793 (1995). On appeal, we review an order denying summary judgement de novo. *Chauvlier*, 109 Wn. App. at 339.

On appeal, Planet Fitness argues that the court erred in denying its motion for summary judgment, because McCoy signed an enforceable liability waiver provision. Planet Fitness contends that the liability waiver provision was so conspicuous that it could not have been unwittingly signed and is therefore enforceable. McCoy argues that a genuine issue of material

5

fact remains as to whether the waiver provision was conspicuous and whether she was given adequate opportunity to read the membership agreement.

II.    LEGAL PRINCIPLES

The Washington Supreme Court has recognized the right of parties "'expressly to agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent.'" *Wagenblast v. Odessa Sch. Dist.*, 110 Wn.2d 845, 848, 758 P.2d 968 (1988) (quoting W. PAGE KEETON, ET AL, PROSSER AND KEETON ON TORTS § 68, at 482 (5th ed. 1984)).

Generally, a liability waiver or exculpatory clause in a contract is "enforceable unless (1) it violates public policy, (2) the negligent act falls greatly below the legal standard for protection of others, or (3) it is inconspicuous." *Johnson v. Spokane to Sandpoint, LLC*, 176 Wn. App. 453, 458, 309 P.3d 528 (2013).  The first two exceptions are not at issue here.  A liability waiver provision is not enforceable if the releasing language is "'so inconspicuous that reasonable persons could reach different conclusions as to whether the document was unwittingly signed.'" *Johnson v. UBAR, LLC*, 150 Wn. App. 533, 538, 210 P.3d 1021 (2009) (quoting *McCorkle v. Hall*, 56 Wn. App. 80, 83, 782 P.2d 574 (1989)).[3]

Courts look to several factors in deciding whether a liability waiver provision is conspicuous including: (1) whether the waiver provision is set apart or hidden within other provisions, (2) whether the heading or caption of the provision is clear, (3) whether the waiver

---

[3] Although the inconspicuousness of a waiver provision appears to be a factual inquiry, the Supreme Court in *Baker v. City of Seattle*, 79 Wn.2d 198, 484 P.2d 405 (1971), determined that a liability waiver provision hidden in the middle of an agreement was so inconspicuous that, as a matter of public policy, it would be unconscionable to enforce it.  Subsequent courts of appeal have treated the issue of conspicuousness, as the *Baker* holding implies, as a matter of law determined by the court.  *See e.g. Stokes v. Bally's Pacwest, Inc.*, 113 Wn. App. 442, 448, 54 P.3d 161 (2002)("The language is conspicuous, as a matter of law, and it was not unwittingly signed.").

provision is set off in capital letters or in bold type, (4) whether there is a signature line below the waiver provision, (5) what the language says above the signature line, and (6) whether it is clear that the signature is related to the waiver provision. *See Baker v. City of Seattle*, 79 Wn.2d 198, 202, 484 P.2d 405 (1971); *McCorkle*, 56 Wn. App. at 83-84; *Chauvlier*, 109 Wn. App. at 342; *Stokes v. Bally's Pacwest, Inc.*, 113 Wn. App. 442, 448, 54 P.3d 161 (2002).

We do not look to whether the plaintiff unwittingly signed the form from her subjective viewpoint, but whether, "objectively, the waiver provision was so inconspicuous that it is unenforceable." *Stokes*, 113 Wn. App. at 446. Essentially, if the waiver provision is hidden, i.e. inconspicuous, it is unenforceable. Nevertheless, even if the waiver provision is conspicuous, and a person signs without reading it, the provision is enforceable unless the signor was not given an opportunity to read it. *Chauvlier*, 109 Wn. App. at 341 ("[A] person who signs an agreement without reading it is bound by its terms as long as there was 'ample opportunity to examine the contract in as great a detail as he cared, and he failed to do so for his own personal reasons.'") (internal quotation marks omitted) (quoting *Nat'l Bank of Wash. v. Equity Inv'rs*, 81 Wn.2d 886, 913, 506 P.2d 20 (1973)).

III.    ANALYSIS

A.    Conspicuousness of the Waiver Provision

We first consider whether the waiver provision is inconspicuous so as to invalidate the agreement. *Stokes*, 113 Wn. App. at 446. Here, the waiver provision contains some, but not all of the elements that we have found significant in determining the conspicuousness of waiver provisions.

7

### 1. The Waiver Provision is Set Apart from Other Provisions

To determine if the waiver provision is conspicuous, we first look at whether it is set apart or hidden within other provisions. In *Baker*, our Supreme Court held that the waiver provision was unenforceable because it was set in the middle of the agreement without anything to distinguish it from the rest of the terms of the agreement. 79 Wn.2d at 202. Here, the waiver provision is set off by a shaded banner or header with a title indicating that the subject of the following section is a "RELEASE OF LIABILITY" and "ASSUMPTION OF RISK." CP at 25. The waiver language is not hidden within other provisions. This factor supports a finding of conspicuousness.

### 2. The Heading of the Waiver Provision is Clear

We also look to whether the heading or caption of the waiver provision is clear. For example, the plaintiff in *McCorkle* argued that the title "Liability Statement" in the agreement did not allow him to "conclude [that] future negligent conduct was being released." 56 Wn. App. at 83. This court contrasted the title "Liability Statement" with the release provisions in two earlier cases that were deemed conspicuous because their titles clearly and unambiguously indicated that they dealt with a waiver of liability. *Id.* In contrast, in *Chauvlier*, this court found clear and enforceable a waiver provision entitled "LIABILITY RELEASE & PROMISE NOT TO SUE. PLEASE READ CAREFULLY!" 109 Wn. App. at 342.

Here, the shaded header reads: "RELEASE OF LIABILITY," "ASSUMPTION OF RISK," "CLUB RULES," and "BUYER'S NOTICE & RIGHT TO CANCEL." CP at 25. Although the header indicates that release of liability and assumption of the risk are not the only topics of the following paragraphs, it is clear from the header what the following provision contains—namely, a release of liability and an assumption of the risk. The inclusion of the other two subjects does

not make the heading of the provision unclear or the reader ignorant of what is contained below the shaded header. This factor supports a finding of conspicuousness.

### 3. The Appearance of the Waiver Provision Language is Not Emphasized

We then look to the appearance or attributes of the waiver provision itself, like whether the words are emphasized in capital letters or in bold type. For example, in *Stokes* and *Chauvlier*, the words indicating release of liability appear in bold or capital letters throughout the provisions. 113 Wn. App. at 448; 109 Wn. App. at 342. Here, the body of the waiver provision is in the same size and type of text as the remainder of the form and has no bold or capital letters. This factor does not support a finding of conspicuousness.

### 4. The Signature Line

We next consider the signature line and its relation to the waiver provision. Specifically, whether it is located below the waiver provision, what the language above the signature line indicates, and whether it is clear that the required signature is related to the release of liability. *Chauvlier*, 109 Wn. App. at 342; *Stokes*, 113 Wn. App. at 448; *UBAR, LLC*, 150 Wn. App. at 538.

#### a. The Signature Line is Below the Waiver Provision

Here, the signature line is below the waiver provision. This supports a finding of conspicuousness.

#### b. The Language Immediately Above the Signature Line does Not Relate only to the Waiver Provision

Here, although the signature line is located below the waiver provision, the signature and waiver are separated by an intervening paragraph. The first paragraph underneath the header relates to the waiver of liability. The second paragraph, situated directly above the signature line relates to the club rules and the right to cancel. This second paragraph also states: "By signing

below, I acknowledge and agree to all of the terms contained on the front and back of this agreement." CP at 25.

In *Stokes*, this court held that reasonable minds could not differ regarding the conspicuousness of a waiver provision contained in a retail installment contract. 113 Wn. App. at 448. This court's determination relied in part on the fact that a statement immediately below the signature line said that the contract contained a waiver and release to which the signatory would be bound. *Stokes*, 113 Wn. App. at 448. In *Chauvlier*, this court relied in part on a statement directly above the signature line reading: "I have read, understood, and accepted the conditions of the Liability Release printed above" in making its determination that the waiver provision at issue was conspicuous and enforceable. 109 Wn. App. at 342. Here, the statement above the signature line is unlike those contained in the contracts held to be enforceable in *Stokes* and *Chauvlier*, because it relates to all provisions of the membership agreement, rather than only the waiver provision. This factor does not support a finding of conspicuousness.

c. The Required Signature Relates to the Waiver Provision

Although separated by a paragraph, the signature line clearly relates to the waiver provision because it is spatially oriented near the waiver provision. It is within the area set off by the large banner described above and by its own language relates to the "all of the terms contained" in the agreement. CP at 25. This factor also favors a finding of conspicuousness.

In summary, although the signature line does not correspond solely to the waiver provision, the provision is set apart from the other provisions of the contract by a banner, the caption heading within the banner clearly identifies the contents of the waiver, the signature line is below the waiver provision and it clearly relates to the waiver provision. We conclude that the waiver provision is conspicuous.

B.    Opportunity to Examine the Agreement

McCoy admits that she did not read the agreement. Even though she did not read the agreement, she would be bound by its terms only if there was opportunity to examine the contract in as great a detail as she cared, and she failed to do so for her own personal reasons. *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 389, 858 P.2d 245 (1993) ("Where a party has signed a contract without reading it, that party cannot successfully argue that mutual assent was lacking as long as the party was not deprived of the opportunity to read the contract.").

McCoy asserts that the Planet Fitness employee identified the agreement as a "mere formalit[y]" that she had to sign in order to join the club. CP at 140. The employee "showed [her] where to sign on a couple documents and [she] signed them, but [she] was not given an opportunity to read all the language" because he immediately took the papers back. CP at 140-41. When McCoy mentioned that she had not been able to read them, he told her that he would mail them to her home address. McCoy was apparently satisfied with not reading it before signing. Although McCoy asserts that she was not given the opportunity to read the membership agreement, there is no indication that she could not have read the contract either before or after she signed it if she had asked. Additionally, McCoy sought out the membership and there is no evidence that she was coerced. The waiver was conspicuous as a matter of law, McCoy has not shown that there is a genuine issue of material fact regarding her opportunity to read the membership agreement. In any case, even if she felt rushed to sign the document, the waiver language was, as a matter of law, conspicuous enough for her to notice it.

54400-8-II

CONCLUSION

The liability waiver was conspicuous. McCoy did not demonstrate an issue of fact regarding her opportunity to read the membership agreement. Accordingly, we reverse.[4]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Worswick, J.

Lee, C.J.

---

[4] Because we reverse the denial of summary judgment, we do not reach the issue of whether the court abused its discretion in denying the motion for reconsideration.